## The Board of Auditors of the County of Wayne v. Emil P. Benoit, et al.

*Officer: De facto: Under color of title.* A person actually obtaining office, with the legal *indicia* of title, is a legal officer until ousted, so far as to render his official acts as valid as if his title were not disputed.

*Salaries of officers.* No claim can be enforced against a county for the salary or perquisites of a county officer, except for a period during which the claimant was the actual incumbent.

*Heard October 26, 1869. Decided April 19, 1870.*

Case made from Wayne Circuit.

Emil P. Benoit and George Miller were candidates for office of Treasurer of Wayne County, at the general election held in November, 1866. Miller was declared elected by the Board of County Canvassers, and entered upon the performance of the duties of his office on the first day of January, 1867, and continued in such performance until November, when he was ousted by the judgment of this Court upon an information filed against him by Benoit; who then became the incumbent of the office and so continued until January, 1, 1869. In settling his account as County Treasurer, at the close of his term of office, Benoit claimed the right to the salary for the whole term for which he was elected, including that portion of the time during which the duties of the office were performed by Miller. The Board of County Auditors, having settled with Miller and allowed him the salary for the period of his actual incumbency, at the rate previously fixed,—$3,000 per annum,—refused to allow the salary for the same period to Benoit; and they bring this action on his bond as County Treasurer for the sum withheld by him, namely; $2,583 33 — that being the amount of salary from January 1 to November 10, 1867. The Circuit Judge rendered a judgment for this sum in favor of the Board of Auditors, which judgment is brought into this Cuort for review upon a case made.

*Theo. Romeyn,* for the plaintiffs.

Miller, having received the certificate of election, was,

until ousted, entitled to be recognized as legally in office, and the County Auditors could not withhold his salary from him. There can be no doubt upon the authorities that Benoit has a legal claim against Miller for whatever fees or salary may be equitably his due.

There would seem to be as little doubt, upon principles of equity, that the county officers, having paid the actual incumbent, as by law they were bound to do, ought not to be compelled to pay to the party who failed to receive the certificate.

The single point which we make is, that an office in this country is not property, nor are the prospective fees or salary the property of the incumbent. The right to fees or salary does not grow out of any contract between the officer and the government, but from the rendition of the services.

If officers of the government act fraudulently and willfully in excluding a party from an office to which he has been lawfully elected, then they would undoubtedly be personally liable to him in an action upon the case. But the government or body politic cannot be made liable for services rendered.— *Sigur v. Crenshaw, 10 Lou. An., 298. Petit v. Rousseau, 15 ib. 239. Smith v. Mayor of New York, 37 N. Y., 518.*

In the case of *Stadler v. The City of Detroit, 13 Mich., 346,* this point was not made by the counsel for the city.

*G. V. N. Lothrop,* for the defendants.

I. A mere *de facto* officer cannot set up the office for his own protection, or as the ground of any rights or benefits to himself. While his acts are valid as to *third* persons, they are of no validity whatever as to himself. This is now elementary.— *Green v. Burke, 23 Wend., 502; People v. White, 24 Wend., 529; People v. Hopson, 1 Denio, 579; Riddle v. County, 9 Serg. and R., 386; 10 Serg. and R. 249; Fowler v. Bebee, 9 Mass., 231; Venable v. Curd, 2*

*Head*, 582; *Patterson v. Miller*, 2 Met. (*Ky.*), 493; *Gourley v. Hawkins*, 2 Clarke (*Iowa*), 175.

II. The compensation of a public officer is incident to the *true title*, and not to mere occupancy.—*People v. Tieman*, 30 Barb. 193; *s. c.*, 8 Abb. Pr. R., 359; 4 Abb. Dig., 206; *People ex rel. Dorsey v. Smith*, 28 Cal., 21.

It was also ruled in *People v. Brennan*, 30 How. Pr. R., 417 (7 Abb., Dig., 484), that a payment of salary to a *de facto* officer was no defense to the claim of a *de jure* officer. It is quite clear that an usurper of an office could not *compel* by law payment to him of his salary; and we insist that it is the duty of the proper officers, in all cases of contest to withhold payment till the matter is decided. Otherwise they pay at their peril.

It is true, that the relator in a *quo warranto* proceeding may look to the usurper for damages.—*2 Comp. Laws, § 5297.*

This may, in cases where the public do not pay a salary and the compensation is limited to fees, be the only remedy; or where fees constitute a part of the compensation, be the only remedy as to that part of the compensation. But where there is a salary the officer may look to those whose duty it is to pay the salary. The usurper may be wholly irresponsible. Shall the lawful officer lose his salary through the wrongful payment by the Auditors? The loss, if any, arises from their wrongful act, not his. Let the loss, then, follow the fault. And if the usurper is responsible, the Auditors can recover the money so erroneously paid.

The case of *Smith v. Mayor*, I am aware, seems to hold that official compensation attends not the true title, but actual occupancy of office.—*Smith v. Mayor*, 1 Daly, 219; *Smith v. Mayor*, 37 N. Y., 518.

But this ruling, we contend is unsound in principle, and against sound public policy. It ought not to be followed here.—See *Stadler v. City of Detroit*, 13 Mich., 347.

THE AUDITORS OF WAYNE COUNTY *v.* BENOIT.

CAMPBELL, CH. J.

Benoit was sued for not paying over the monies in his hands as Treasurer of Wayne County. The sum which he retained was an amount claimed to be due to him for his salary, during the pendency of proceedings in *quo warranto*, against George Miller, who held the office in fact, but who was decided not to have been lawfully elected.

The case shows that Miller was declared and certified by the county canvassers to have been duly elected, and that he took the legal oath and gave bond and assumed the office, and held it and performed its duties and received its emoluments until ousted; and that Benoit was finally by the judgment of this Court declared entitled to the office, and has still pending his claim on suggestion of damages under the statute.

The Court below held that Benoit could not claim his salary against the county, when Miller had received it as Treasurer, actually holding office in the manner mentioned.

It seems very well settled that as against the person who has kept him out of office by the intrusion, an action would lie for the injury, under which the lawful perquisites, which he would have received if in office, will be the proper subject of inquiry. Our statute has recognized the right to this redress, and has substituted a suggestion instead of the old action on the case of the assize. The precise measure of damages it would not be proper for us, on this hearing, to consider. But the right is unquestionable, and is put on the same footing with actions for disseizin of lands. See *Petit v. Rousseau, 15 La. An., 239 ; Sigur v. Crenshaw, 10 La. An., 298 ; Boyter v. Dodsworth, 6 T. R., 681 ; U. S. v. Addison, 6 Wallace, 291; same v. same, 22 How. R., 174.* In the latter case the jurisdiction of the Court to try the cause depended upon the amount of money involved in the issue, and it was held that in the *quo warranto* proceedings

the salary received and receivable by the defendant was, for this purpose, a governing consideration.

It cannot be possible that a county can be liable to pay the same salary twice over; and if the present claimant can demand the money, it must be because the payment to Miller was not warranted. And this can only be upon the assumption, that the county authorities were bound to know who was lawfully entitled to the fees, or else, that they were bound to prevent the defeated party from getting the salary until the suit was decided.

Whatever may be the case in regard to a mere intruder, without any claim or color of title, there can be no doubt that a person actually obtaining office with the legal *indicia* of title is a legal officer until ousted, so far as to render his official acts as valid as if his title were not disputed. And it is equally plain that there can never be two incumbents at once. If one is in, the other claimant is out, and the law never has tolerated any other theory. The proceeding by *quo warranto* will not lie when an office is vacant. (*Rex v. Whitwell, 5. T. R., 85.*) And whenever a *mandamus* has been sought which would in any way involve an inquiry into the right to an office, it has been held that if the office is actually full, there can be no inquiry except upon *quo warranto*, and until the incumbent is thus ousted, no one else can have any enjoyment of the office. (*Rex v. Mayor of Colchester, 2 T. R., 259; Rex v. Mayor of Oxford, 6 A. & E., 349; Reg. v. Mayor of Winchester, 7 A. & E., 215; Reg. v. Phippen, 7 A. & E., 966.*)

It was also held in *People v. Head, 25 Ill. R., 325*, that *mandamus* will lie in favor of a party who has the proper title or certificate, against a prior officer who claims to hold over, under a new election, to compel him to respect the official certificate, and seek his remedy as a relator in proceedings by *quo warranto*. And in *Queen v. Blizard, L. R. 2 Q. B. 55*, it was held that a resignation of a defendant in *quo warranto*, was no answer to the application for a writ,

because without judgment of ouster the relator could not get in.

The position of a person who has a right to claim an office, but has not yet assumed it, is in no sense an incumbency. (*The King v. Swyer, 10 B. & C. 486.*) Under our statutes the party, however well entitled, loses his right, unless he files his oath and bonds. (*C. L. § 475.*) We held in *People v. Mayworm, 5 Mich. R., 146,* that a person who had been deprived of his evidences of title by the granting of a certificate to some one else, was not compelled to file his oath and bond until judgment in his favor, because no one was obliged to recognize him as against the one holding the certificate. If, however, the county authorities were compelled to look behind the papers, there could be no reason for any such exception. And nothing but actual incumbency can make a person a legal officer, however much he may be entitled to obtain the office. And, certainly, when a person stands of record as ousted and demanding the ouster of another, whom he alleges to be wrongfully in office, as a means of getting his own rights, it could not be claimed that the acts of the relator would be in any sense official acts. The only valid proceedings in the name of office must be those of the actual incumbent. And his acts are valid to all purposes, except, possibly, his own protection from liability as a wrong-doer. The doctrine of the validity of the acts of officers *de facto* has been carried as far as possible. In *State v. Williams, 5 Wis., 308,* it was held to make good the approval of a statute by a Governor usurping office. In *Venable v. Curd, 2 Head R. 582,* it was carried to the questionable extent of making good the action of a court under an invalid statute. In *Doty v. Gorham, 5 Pick., 487,* where an officer *de facto* had made a sale, it was held that in a suit against himself, with others, for removing property thus sold, he could justify under the sale. In *Leach v. Cassidy, 23 Ind., 449,* it was held that a school officer *de facto,* could not have his title questioned, in an application made

by him for a *mandamus* to compel the payment to him of
school moneys by the local officers. And it will not be denied
that Miller, the acting Treasurer of Wayne County could
have compelled the payment to himself officially of all funds
belonging to the treasury.

In *Desmond v. McCarthy, 17 Iowa, 525,* it was held that
in a replevin by an officer *de facto* to recover the papers be-
longing to his office, which had been withheld on a claim
that he was not the lawful officer, his title could not be
questioned, but that the only inquiry on that must be in
proceedings to oust him.

The general doctrine in regard to *de facto* officers is so
familiar that no citations are necessary to show it.

If courts themselves, when called on for affirmative ac-
tion in aid of an officer, cannot inquire into his title, it
cannot be reasonable to allow or to expect other bodies or
persons to do so. No case is to be found in which such
an inquiry has been sanctioned. And nothing could be more
unsafe. It is quite possible for persons to combine and connive
at fraudulent contrivances to secure office unworthily. But
it is just as easy to do it in one interest as in another;
and if the county authorities can withhold money and offi-
cial privileges on a pretence that an incumbent is not legally
elected, they can practically control the offices. The law
presumes that public functionaries do their duty, and if the
certificate of county canvassers, under oath, is not to be re-
spected, there is no reason for respecting the acts of any
one else. All bodies can do wrong, — but our government
proceeds on the assumption that they probably will not.
And when a person, duly certified, has complied with the
ceremonies and conditions incident to office, public policy
would not be subserved by allowing his rights to be ques-
tioned in any other form than by a judicial trial. Thus
much respect is given to all other ministerial certificates
when acted upon, and there is no reason for applying a
different principle here.

It was held in *Smith v. Mayor of N. Y., 37 N. Y., 518,* that no claim could be brought for salary or perquisites against a municipal corporation, covering any period when the claimant was not actually in office ; and this was put on the ground that these are the reward of express or implied services, and therefore can not belong to one who could not lawfully perform those services, although wrongly hindered from occupying a position in which he might render them. And in the previous case of *Connor v. Mayor of N. Y., 5 N. Y. 285,* the same doctrine as to the nature of official salaries and fees was laid down. Nor does there seem any good reason for doubting this rule. If an office were a contract relation, it is shown by the reasoning that it would not be competent to legislate so as to impair its tenure or its value. Yet it has always been held competent to abolish or modify tenures and profits at the will of the Legislature, when not restrained by the Constitution. And there can be no consistent theory, except that which regards official rewards as the recompense for actual or implied official work. Nor would it be possible in most cases to have the work done without some certainty of pay for it. An officer is not to be expected to work for nothing, so long as it may please his enemies to assume to doubt his title. There is very good reason why he should be compelled to respond to the rightful claimant who would have been glad to fulfill the conditions. But the laws assume that the laborer is worthy of his hire, and the person who is required to be recognised, for the time being, as the legal incumbent for the purposes of doing the work, should be recognised for the purpose of remuneration also, so far as those are concerned with whom he deals officially, and who have no personal interest in the contest for the office.

The California authority,—*People v. Smyth, 28 Cal. 21,* is based entirely upon New York cases which are not law in the latter state, and which were made in disregard of

the previous decision in Connor's case. It has no reasoning of its own and does not seem warranted by principle.

There is an entire absence of authority elsewhere in favor of any such principle, and inasmuch as suits have been numerous, and decisions uniform, for centuries in regard to claims against the wrongdoing intruder, and no precedents are to be found favoring suits against those from whom payment for official services would originally be sought, the silence of the books on a question which could not have escaped notice is very significant. It can only be explained by the maxim that the right to office of a person in actual possession cannot be questioned collaterally.

There is one modern English case which is quite in point. In the case of the *Queen v. Mayor of Cambridge, 12 Ad. and El., 702,* under an act providing remuneration to persons removed from office, it was held that an officer *de facto* who had not complied with certain provisions, which would have made him an officer *de jure,* was nevertheless entitled to the remuneration, because he was actually in office and had been performing the duties. While made under statutory provisions, the decision, if not directly authority, is nevertheless somewhat analogous to our own practical construction of the laws here.

There may be cases where the redress of the aggrieved party will be difficult. But the public convenience is not on that account to be sacrificed. It is important to have the right man in office, but it is more important to be able to deal safely with those who are actually in place. And there would be great hardship in allowing the whole public interests to be thrown into confusion whenever a contest arises for office. It would invite rather than prevent litigation, if every claimant understood that by setting up a claim to office he could stop the salary of the incumbent.

The principle involved in the case cannot differ in different offices. It so happened that this is a contest con-

cerning a salary which is payable to himself by the incumbent,—as custodian of the county funds, but subject to a settlement of accounts. If instead of the treasurership, the clerkship or sheriffalty had been in dispute, and the officer *de facto* had been compelled to resort to a court to compel payment of his salary, the authorities are uniform that the title to the office could not be tried in that collateral way. The people of the state must be parties to such a controversy.

There is a distinction taken by many authorities between an office held *de facto*, under color of title, and one usurped without any legal pretext. This distinction is hinted at in *Plymouth v. Painter, 17 Conn. 585*, and *Wilcox v. Smith, 5 Wend. R. 231;* and is recognized in other cases. A somewhat similar question was discussed, but not decided, in *Carleton v. People, 10 Mich. R. 250*, where there was a difference of opinion as to an incumbency when the time had not arrived for the full operation of a statute. There is certainly some reason for distinguishing between barefaced usurpation and the assumption of office under the paper title prescribed by statute.

In the case of *Stadler v. City of Detroit, 13 Mich.˙ R. 346*, the only question argued or considered was whether Stadler's term of office had been ended, and nothing was said by any one concerning the right of action in case he remained entitled to the office. That right was conceded, and of course such a decision could be no precedent, except upon the point actually considered and decided. But it may be doubted at least, whether that case presented any such difficulties as arise here. Stadler, being in office for two years, under a state statute, the Council instead of removing him which might have been done, assumed that the office was vacant at the end of one year without removal, and appointed Mahaney upon the theory that no one was in office at all. They acted under a mistake of law, which vitiated Mahaney's appointment on its face ; and Stadler remained

an officer *de facto* as well as *de jure*, there being no *ouster* in the proper sense of the term. And, moreover, the body he sued was the very body that did the alleged wrong,— while the corporation representing the county has nothing whatever to do with the appointment or installation of county officers. It is enough, however, to say that as the question of liability to suit was not raised in that case, it does not preclude its decision here as an original question, and it is not important whether the two cases differ in the principle involved upon this point.

We think the decision below was correct, and that it should be affirmed with costs.

GRAVES, J. concurred.

COOLEY, J.

In order to apply the proper rules of law in this case, it is important to keep in view the precise facts which the record discloses.

The defendant it appears, was elected to the constitutional office of Treasurer of Wayne County, at the annual election held in November, 1866. The Board of County Canvassers, however, declared Miller, the opposing candidate to be chosen, and Miller usurped the office. The term of office was two years from the first day of January, 1867; and the Board of County Auditors had, previously to the day last mentioned, fixed the salary of the office at $3,000, at which sum it remained during the period covered by the present controversy. On the fourth of January, 1867, the defendant caused an information to be filed in this Court against Miller, which he diligently prosecuted to judgment, and judgment was rendered on the second day of November following, to the effect that the defendant was lawfully elected to said office, and that Miller had wrongfully usurped the same, and ousting Miller therefrom.

Miller did not surrender the office until the eighth day

of November, 1867. He accounted with the Board of Auditors and by them was allowed and paid the salary up to the tenth day of November, 1867. On what day this settlement took place does not appear, but the case negatives any inference that it was before he surrendered the office. He credited himself with the amount in rendering his accounts to the Auditors, and they allowed and paid it. The occasion for any settlement of accounts, before the end of the fiscal year, was the judgment which terminated Miller's usurpation, and the Auditors must therefore have acted with full knowledge of the facts.

Was Miller entitled to claim and demand of the Auditors the salary which they allowed him? I think not. The only ground on which he could claim it was, that he had occupied the office and performed its duties, and was an officer *de facto*. Now the acts of an officer *de facto* are unquestionably good for many purposes, but for many others he is regarded in the law as a mere trespasser. Whether they are valid or void depends on the purpose for which they are considered. The public, who have an interest in the continuous discharge of official duty, and whose necessities cannot wait the slow process of a litigation to try the title, have a right to treat as valid the official acts of the incumbent, with whom alone, under the circumstances, they can transact business. This rule is an obvious and necessary one for the protection of organized society; for, as was said in *Weeks v. Ellis, 2 Barb., 325,* the affairs of society cannot be carried on unless confidence were reposed in the official acts of persons *de facto* in office. And private individuals, in controversies between themselves are not permitted to question the acts of an officer *de facto* for the further reason that to do so would be to raise and determine the title to his office in a controversy to which he was not a party, and in which he could not be heard. And this, says Parsons, Ch. J. "would be judging a man unheard, contrary to natural equity, and the

policy of the law. From considerations like these has arisen the distinction between the holding of an office *de facto* and *de jure.*" (*Fowler v. Bebee, 9 Mass., 234.*) In *Bucknam v. Ruggles, 15 Mass., 182,* the rule and the reason for it are stated thus: "It is an established principle of law that the acts of an officer, having color of title, in the exercise of the ordinary functions of his office, are valid in respect to the rights of third persons who may be interested in such acts. The adoption of such a rule is necessary to prevent a failure of justice, and the great public mischief which might otherwise be justly apprehended. Besides, the officer's title ought not to be determined in a collateral way." See also *Tucker v. Aiken, 7 N. H., 131; Plymouth v. Painter, 17 Conn., 585; Commissioners, etc., v. Mc-Daniel, 7 Jones, (Law,) 107; Colton v. Beardsley, 38 Barb., 29; Rounds v. Bangor, 46 Me., 541; Coles County v. Allison, 23 Ill., 437; Creighton v. Piper, 14 Ind., 182; People v. Stevens, 5 Hill, 630; Cocke v. Halsey, 16 Pet., 85; Baird v. Bank of Washington, 11 S. and R. 411.*

But the party himself who had usurped a public office is never allowed to build up rights, or to shield himself from responsibility on no better basis than his usurpation.

As it is said by Parsons, Ch. J., in *Fowler v. Bebee, 9 Mass., 234,* if an action should be commenced against one claiming to be Sheriff, for an act which he does not justify but as Sheriff; or if an information should be filed against him, in either case he would be a party, and his title to the office might be tried. The same principle is stated by Bronson, Ch. J., in *People v. Hopson, 1 Denio, 579,* who adds that "clearly he cannot recover fees, or set up any right of property on the ground that he is an officer *de facto,* unless he is also an officer *de jure.*" And Heath, J., in *Lightly v. Clouston, 1 Taunt., 113,* referring, it is supposed to *Howard v. Wood, 2 Lev., 245,* says that "so long back as the time of Charles the Second, it was held that the title to an office under an adverse possession might be

tried in an action for the fees of the office had and re-ceived."—And see *Weeks v. Ellis, 2 Barb., 325.*—It was very strongly intimated in *People v. Hopson, supra,* that if one resists an officer *de facto,* and the latter prosecutes him for the assault, it would be a good answer to the action that he was not a legal officer, but a wrong doer; for when one man attempts to exercise dominion over the person or property of another, it becomes him to see that he has an unquestionable title.

The doctrine on this general subject was very clearly and fully stated by Cowen, J., in *Greene v. Burke, 23 Wend., 492.* The question in that case regarded the validity of a levy made by one Stephenson who had been declared elected constable while under age. "It appears," says the Judge, "that the town had elected him to the office of constable, and the Justice had placed the execution in his hands. The plaintiff then directed him to go on and collect as soon as might be. He levied, but becoming satisfied that he had already committed a trespass, he was too prudent to go any further; he returned the process to the Justice, and gave up the property to the defendant. The latter offered to pay him the money, but he would not take it. Now it is said that he was an officer *de facto,* and that his acts bound the defendant and the plaintiff. He may indeed have been an officer *de facto; People ex rel., Dobbs v. Dean, 3 Wend., 438;* and had he gone on and collected the money, the defendant never disturbing him, nor the creditors in their possession of it, the thing would have been well enough. But his acts were valid only in respect to such third persons as were affected by them. (*Viner's Abr. tit. Officer, G. 3 Id. G. 4.*) I know cases have gone a great way. But they have stopped with preventing mischief to such as confide in officers who are acting without right. (*People ex rel. Bush v. Collins, 7 Johns, 549* )". "It by no means follows from any decided case, that where a town elects a minor to an office, and he

accepts it, and presumes to act in the face of a public statute, he can protect himself when sued as a trespasser. " " Suppose a justice, who is a disqualified tavern-keeper, to render a judgment; could he protect himself against trespass for issuing an execution? Could he recover fees? But we need not pursue this distinction on principle. It is very sensibly settled by a series of cases in Pennsylvania, where most of the authorities have been examined. The result was stated in *Riddle v. Bedford, 7 Serg. & Rawle, 386, 392.* 'The sound distinction," says Duncan, J., "is, that the office is *void* as to the officer himself, but *valid* as to strangers.' The same distinction has since been recognized there in several cases. *Parker v. Luffborough, 10 Serg. & Rawle, 249 ; Keyser v. McKissan, 2 Rawle, 139, 140."*

There are no cases in conflict with these decisions, and it is quite unnecessary to follow the authorities further. It is evident that Miller had not a shadow of claim to compensation for services rendered the county during his usurpation, and that he could not . have enforced payment by law. When the Auditors paid him they did so without legal compulsion and without necessity, and the same rule of policy which precluded Miller's right to the office being tried in a collateral proceeding to which he was a stranger, will also preclude this settlement between Miller and the Auditors being used to the prejudice of the defendant who was not, and, from the nature of the case, could not have been a party to it.

Was, then, the defendant entitled to the salary which was paid to Miller? The county was under legal obligations to pay it to some one. We have already seen that that obligation was not to Miller, who could not have taken the first step necessary to establish his title to the office to which the salary pertained. The foundation of his claim must have been a rightful, and not merely an actual incumbency of the office; and that, with him, did not exist at any time during the term. It would seem, therefore, that there could

be no reasonable doubt of the salary belonging to the defendant, and to hold that it might be lawfully paid to Miller is, in my opinion to disregard principles which have been settled too long, to be now disturbed.

It was insisted, however, on the argument, that certain New York cases were in conflict with this conclusion. The first of these is *Conner v. Mayor, etc., of New York, 5 N. Y., 285.* That case decides that the prospective salary or other emoluments of a public office are not property in any sense, and may be increased, reduced or regulated by law at all times, except where the Constitution has forbidden it. The position is unquestionable, and the reasoning of the Court is satisfactory. It is obvious, however, that from the nature of the question presented, the decision can have no special application to the present case. The other case is that of *Smith v. Mayor, etc., of New York, 37 N. Y., 518,* and that, we must admit, has some apparent analogy to the present. There a deputy street commissioner brought action against the city for fees allowed by law for the collection of assessments, which he had been prevented by usurpation from collecting. The fees were a certain per centage on the amount collected, and, it is inferable, though not distinctly stated, that the officer *de facto* retained this per centage when he paid the moneys over. It is obvious that an action against the corporation for the recovery of fees for specific services performed by some other person than the plaintiff, may stand on a different footing from an action for a definite salary, which is payable as a whole whether the services are greater or less.

The general language employed in these cases, that the right to fees grows out of the rendition of the services, is on all logical rules to be understood with reference to the particular facts then before the court, and cannot be applied universally, as claimed by the defense, without coming in conflict with the decision of this Court in *Stadler v. Detroit, 13 Mich., 347.* We there held that a municipal corporation

which had excluded a salaried officer from the performance of his duties was bound to pay him the salary. We are still, I believe, satisfied with this decision. That the right to fees does not necessarily depend upon the performance of the official duties, is also declared in *Glascock v. Lyons 20 Ind. 3,* hereafter more particularly referred to.

The only case directly in point is that of *People v. Smyth, 28 Cal. 21,* and there it was held that the lawfully elected officer, who had been excluded by one coming in by color of title, might, after recovery of the office, maintain an action against the county for his salary, during the usurpation, notwithstanding it had been previously paid to the usurper. This decision appears to me to be sustainable on the soundest reasons of public policy. A wrong is done to society and to public order in every instance in which the usurpation of a public office takes place; and the rules of law ought to be such as to give the greatest possible discouragement to such a proceeding. The county authorities, in a case like this, ought not to be told that they may countenance the intrusion with impunity, and deliver over to a usurper the emoluments of an office to which he has neither a legal, nor a moral claim. Such a rule encourages usurpations, and tends to lower the standard of public morality. Public policy requires that municipal officers should be allowed to sanction or recognize the intrusion only so far as may be necessary to give the public the full benefit of protection, which the rule regarding the acts of officers *de facto* was designed to afford.

It is said, however, that the defendant has a complete remedy by recovery of damages against Miller. If I am correct in what I have already said, this is no answer to the present action. If one has a remedy against two persons for the same wrong, his action against one cannot be defeated by showing that he might have sued the other. But is the action against Miller a complete and adequate remedy? This will depend, *first,* on his pecuniary responsi-

bility, and *second*, on what the rule of damages may be. Upon the first point we have no information, nor is it very material what it might be in the present case, as a general rule is what we seek, and intrusions are quite as likely to be made by irresponsible persons as by any others. It is quite evident that many cases may occur in which the remedy against the intruder will prove utterly inadequate for this reason. And the true rule of damages in a proceeding against Miller is not entirely clear. If the rule is indefinite, so that the jury may be at liberty to allow the intruder full compensation for the services which he ought not to have performed, it is obvious that the remedy is not adequate. If, on the other hand, the damages recoverable are the amount of salary received, then it appears equally obvious that this suit is maintainable. For what a farce would that be, to hold that when the county authorities are in possession of a sum of money which rightfully belongs to the defendant, they may excuse themselves from paying it over, by giving him a cause of action to the same amount against another person, who may or may not be able to respond, and who in any event is to be made to pay only after the expense of a suit at law.

That, as against Miller, the rule of damages would be the sum actually received by him, and that this might be recovered in a common law action for 'money had and received, is the result of the case of *Glascock v. Lyons, 20 Ind., 3.* It appeared in that case that Glascock had been elected Sheriff, but Lyons, by fraud, had secured the certificate of election and had performed the official duties and received the fees. To recover the amount of these fees Glascock brought action, and it was held that he was entitled to them. Perkins, J., says: "It is perhaps the correct theory, in reference to an office elective by the people, that the fact that an eligible person is duly chosen to fill the same, confers upon him the right, the title to such office, and the certificate of election or commission is in some

20 MICH.—Y.

respects something like a deed to land, the mere evidence of such title. This title gives the right to exercise the accustomed or fixed duties of the office, and receive the fees and emoluments therefor. In this right, it has often been contended, there may exist a franchise to whïch the rights of property may attach for certain purposes."

"If the proposition is correct that he who is rightfully entitled to an office has a property in it, though not, perhaps, strictly in the commercial sense of that term, then we are not able to perceive how a mere intruder, who may perform the duties for a time, can in good conscience retain the fees, etc., for such service. If he could, under such circumstances, be permitted to retain such fees, it would be on the ground that they were a remuneration for his labor, etc., but that would not justify the retention of any such sum over such mere remuneration ; if justified to that amount, how could the case be distinguished from one where A. B. may, without contract or request, express or implied, perform ordinary labor for C. D. ? In the latter it is well settled there is no right of action accrues to the laborer. How could there in the former ? If not, upon what principle can the labor be set up as a defense to an action for money received to which the plaintiff was entitled ? "

This case, it will be seen, is entirely inconsistent with the deduction the plaintiffs draw from the cases in *5th* and *37th New York,* but it is in harmony with all those in which it has been held that salary and fees are incident to the title, and not to the usurpation and colorable possession of an office.—*People v. Tieman, 30 Barb. 195* and cases before cited.

I think the weight, both of reason and authority, is with the defendant, and that the judgment should be reversed.

CHRISTIANCY, J.

I concur, in the result in this case, with my brother

Campbell. But had it affirmatively and satisfactorily appeared that the Auditors had actually and voluntarily *paid over* the salary to Miller after the judgment against him in the *quo warranto* proceedings, instead of merely allowing his account for so much retained by him on account of his salary, I should have concurred with my brother Cooley in his view of the case.