(No. 24502.—

CHARLES F. McKINLEY, Appellee, *vs.* THE CITY OF CHI-
CAGO, Appellant.—SAMUEL HELLER, Appellee, *vs.* THE
CITY OF CHICAGO, Appellant.

*Opinion filed June 15, 1938—Rehearing denied October 5, 1938.*

BARNET HODES, Corporation Counsel, (JOSEPH F. GROSS-
MAN, and J. HERZL SEGAL, of counsel,) for appellant.

McKINNEY, FOLONIE & GREAR, and DENEEN & MAS-
SENA, (HAYES McKINNEY, DONALD N. SCHAFFER, and
JEFFREY SHEDD, of counsel,) for appellees.

Mr. CHIEF JUSTICE SHAW delivered the opinion of the court:

This is an appeal from the Appellate Court for the First District, on leave granted, to review judgments in the superior court of Cook county in two consolidated cases, one on behalf of Charles F. McKinley and the other on behalf of Samuel Heller. The cases are identical, except as to dates and amounts, and are both determined by the same principles of law. Plaintiff McKinley had a judgment of $15,828.30 and Heller one for $3803.26 in the superior court, while on appeal the finding was in favor of McKinley for the sum of $32,384.44 and for Heller the sum of $8476.24.

The facts are stated in great detail in the opinion of the Appellate Court to which reference is made. (291 Ill. App. 571.) In brief, McKinley was a candidate for the office of judge of the municipal court of Chicago at the election in 1930, and Heller was a candidate in the election of 1932. In each of these elections twelve judges were to be selected,—the twelve receiving the highest number of votes cast. In the McKinley case, George C. McIntyre was declared to be the twelfth candidate elected and the certificate of election issued to him. In the Heller case, Irwin J. Hasten appeared the winner of twelfth place and received a certificate of election. In the one case, McIntyre, and in the other case, Hasten, assumed the duties of the office and performed the same until termination of election contests had upset the returns as canvassed. Thereafter, each of the plaintiffs assumed the duties of office and performed them from then on. In each case the city paid all statutory salaries to the *de facto* incumbent. These two suits are for the recovery of the salaries of judges McKinley and Heller from the dates of their respective elections and the defense in each case is that the salaries were paid in good faith to McIntyre and Hasten, respectively, who as above stated were *de facto* incumbents of the offices under certificates of elec-

tion, which were apparently valid and which, in each case, were issued pursuant to due and regular canvasses of the votes.

The question presented by this record has been considered and decided in a large number of cases, many of which were reviewed by the Appellate Court, and, as the opinion of that court indicates, there is a diversity of opinion as to the question involved. There is no occasion for us to re-review all of these cases nor to go into the matter further than to say that we disagree with the Appellate Court as to the weight of authority, the better line of reasoning and the public policy involved. Neither do we believe that the question is an open one in this State.

It is true we have decided no case precisely and exactly in point, and yet such cases as we have considered indicate a result different from that arrived at by the Appellate Court. In *People* v. *Schmidt*, 281 Ill. 211, we had under consideration a proceeding in *mandamus* in which it was sought to compel payment of a salary alleged to be due Franz Sartison in his position of grain helper in the East St. Louis grain inspection office. Sartison was unlawfully discharged from his employment, which was under civil service, and was afterwards reinstated. He reported for duty each day but was not permitted to work and during that time the position was filled by another employee who was eligible under the civil service law and who performed the duties of the employment. We held that this was a mere employment and not an office, but that the situation was controlled by the rules relating to officers. We defined a *de facto* officer as one who actually performs the duties of the office with apparent right under claim or color of appointment or election. We pointed out the conflict of authorities on the question of whether or not a *de jure* officer can recover his salary after the public authorities in good faith have paid the same to a *de facto* officer. We also referred to the various annotations and cases which discuss

the different views of this question and quoted with approval from *Dolan* v. *Mayor,* 68 N. Y. 274, and *Board of Auditors* v. *Benoit,* 20 Mich. 176. In the latter case it is said: "It is important to have the right man in office, but it is more important to be able to deal safely with those who are actually in place, and there would be great hardship in allowing the whole public interests to be thrown into confusion whenever a contest arises for office. It would invite, rather than prevent litigation if every claimant understood that by setting up a claim to office he could stop the salary of the incumbent." It is noted, in that case, that the eminent jurist, Judge Cooley, filed a dissenting opinion. His point was that if there was any doubt about the title to an office, the *de facto* incumbent should be required to sue for his pay, thus securing a judicial determination of his title. The procedure suggested by Judge Cooley in his dissent would be of no value under the election machinery provided in Illinois, because, in the absence of an election contest there would be no question to be decided, the certificate of election or commission being conclusive in the absence of a statutory contest. We are convinced that the rule laid down in New York and Michigan, which was quoted with approval in *People* v. *Schmidt, supra,* is the only sound and safe one from the standpoint of public policy.

In the later case of *People* v. *Burdett,* 283 Ill. 124, the same question came before us and our decision in *People* v. *Schmidt* was confirmed and followed, and it was expressly stated that any conflicting views in *People* v. *Coffin,* 279 Ill. 401, were overruled. In *Hittell* v. *City of Chicago,* 327 Ill. 443, and *O'Connor* v. *City of Chicago,* 327 id. 586, we again approved and confirmed the *Schmidt case* with the added holding in the *Hittell case* that it was not necessary for the city to prove its good faith in paying the *de facto* incumbent.

The two plaintiffs insist that the rules which we have just discussed apply only to mere positions or employments,

not to public elective officers, but we fail to discern the validity of such an argument. On the other hand, it seems to us that these rules apply with greater vigor and more urgent public necessity to offices than to mere employments. If the rules of public policy which we have heretofore announced, and to which we now adhere, are important to grain inspectors and city engineers, they are certainly more vital to the public interest when the matter concerns judges. An election for judges of the municipal court results in the election of twelve candidates receiving the highest number of votes, so that a contest against one is necessarily a contest against all. If the public authorities must pay at their peril whenever a contest is started, then any candidate, even though hopelessly defeated, might throw the entire judicial machinery into disorder by merely starting a contest. Such a rule would require the city and its various disbursing officers to become insurers of the result of an election with which they had nothing to do, or else withhold all salaries until the cumbersome machinery of an election contest could be put in motion and the contest carried through to its conclusion. This would include the time within which an appeal might be prosecuted to this court, and if an appeal were prosecuted to this court then, until the matter had been decided here, the time for a petition for rehearing expired or a rehearing denied and the term of court adjourned.

We consider it much more in the public interest to adhere to our previously indicated rule. It is our opinion that a certificate of election following a regular canvass and the possession of a commission by those officers who are commissioned, fully protects the disbursing officers from further liability if they have paid salaries to such an incumbent.

The judgments of the Appellate Court and of the superior court of Cook county will be reversed.

*Judgments reversed.*