Anthony J. Murray, Plaintiff-Appellee, v. City of Chicago, a Municipal Corporation, Defendant-Appellant.

Gen. No. 48,090.

First District, Third Division.

December 21, 1960.

John C. Melaniphy, Corporation Counsel of the City of Chicago (Sydney R. Drebin, Assistant Corporation Counsel, of counsel) for appellant.

Francis J. Kennedy, of Chicago, for appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a judgment for $3834.78, salary claimed by plaintiff for the period during which he was wrongfully prevented from occupying the position of sergeant of police and receiving the salary appropriated therefor by the City of Chicago. Plaintiff's right to the position was litigated and determined by a

judgment entered in a mandamus suit filed by him in 1952 in the Circuit court of Cook County. He was awarded a writ ordering his appointment on July 30, 1952. On December 14, 1956, he filed this suit. The issue is whether plaintiff is entitled to salary from the time he was certified for promotion to sergeant, December 15, 1951, to the date on which he was finally appointed, September 24, 1952, or whether, as the city contends, that at most he is entitled to salary only from the time the mandamus judgment was rendered, July 30, 1952, to the date of his appointment, September 24, 1952.

Plaintiff was a patrolman in the service of the city from July 1, 1929 to November 19, 1949, when he resigned. On December 21, 1949 his resignation was withdrawn and his name restored to the reinstatement list in accordance with the civil service rules relating thereto. On April 12, 1950 he was certified for return to service as a patrolman. He was allowed to waive certification, which appears to be the equivalent of a grant of leave of absence, and remained on waiver until November 27, 1951, when the waiver time expired. Plaintiff is a lawyer and sought to practice law following his resignation from the department. At the same time he desired to maintain his status in the civil service, evidently to determine whether he could provide for himself and family in the practice of law, as always a precarious undertaking. On July 19, 1951 he wrote to the secretary of the Civil Service Commission, saying that according to notice of reinstatement of July 13, 1951, he had five days to report for duty; that he kept posted on police department appointments, with the end in view of having four to six months time to wind up his legal business "in order to report for active duty to protect my being on the eligible register as I have a wife and four children to support." On that letter there is a notation evidently put there by the

Commission: "Approved 4 months extension. For Extension of waiver for four months AUTHORITY GRANTED Jul 27, 1951." On August 7, 1951, the secretary of the commission wrote plaintiff a letter advising him that the commission had granted an extension on July 27, 1951, of four months waiver time for patrolman. It was then stated: "At the expiration of these four months, your waiver will be withdrawn and your name restored to the reinstatement list." During all this period plaintiff, who had passed a sergeant's examination in 1938, was number 96 on that list for promotion. On December 15, 1951, 100 men were appointed by the Commissioner of Police, but plaintiff was not among them.

According to plaintiff's uncontroverted testimony, he had ceased to practice law by December 15, 1951, having wound up his law business, and was ready to go back to work as a patrolman if not a sergeant. He went to the office of the Commissioner of Police and was told that he was a sergeant and should go down to the Civil Service Commission and talk to them. He related the facts to the president and secretary of the Commission. On February 25, 1952, 400 men were certified from the patrolman's list, and plaintiff's name was among them. Seeking reinstatement as a patrolman if he could not get an appointment as sergeant, plaintiff was advised that there would be no action in his case until an opinion was rendered by the Corporation Counsel's office, there being a question as to whether he was eligible for promotion to sergeant in view of the fact that he was not on the active list at the time of his certification. Finally plaintiff made a formal demand and instituted the mandamus suit which culminated in his being awarded the writ and his appointment on September 24, 1952.

It is the contention of the city that there can be no recovery for salary for a period during which no services were performed, and that this case is distinguish-

able from precedents in that plaintiff was not ousted from a position, but sought appointment to a new one. This is not the law in Illinois. In Corbett v. City of Chicago, 391 Ill. 96, 62 N.E.2d 693, plaintiffs, telephone operators in the police department, were awarded their salaries from the time of the judgment in a mandamus suit, holding that they were wrongfully denied certification, to the date of their appointment. The issue before the Supreme court in that case was whether payment by the city of salaries to de facto employees constituted a complete defense to the plaintiffs' claim. The court affirmed the trial court, holding that payment to de facto employees was not a defense to a claim for salary made after a judicial order sustaining the plaintiffs' right to their position. The court distinguished the case of McKinley v. City of Chicago, 369 Ill. 268, 16 N.E.2d 727, and other cases appearing to sustain a contrary position, on the ground that in the Corbett case the plaintiffs had obtained a judgment sustaining their right to the position.

On the question of this being a new appointment and not an ouster from one already held, the court in the Corbett case said:

> "We can see no fundamental difference in law and equity between the legal wrong done to the individual unlawfully removed from his position and the legal wrong done to the individual who, by the action of a city, is prevented from enjoying that which is rightfully his."

391 Ill. at 101; 62 N.E.2d at 695. Nothing was said or decided in that case on the question of whether the right to salary dates from the date of discharge or is confined to a period dating from the time a court has ordered reinstatement. Subsequent cases have settled that issue.

In People ex rel. Polen v. Hoehler, 405 Ill. 322, 90 N.E.2d 729, the trial court awarded a writ of mandamus

directing that the plaintiff, an employee, be paid her regular salary from the date of her discharge. The Supreme Court found that it was error to order state officials to pay the salary illegally withheld as there had been no appropriation therefor. They held, however, that it was proper to render a judgment that the petitioner was entitled to salary from the time of her discharge.

In Kelly v. Chicago Park Dist., 409 Ill. 91, 98 N.E.2d 738, employees of the district sought to recover judgments for salaries from November 1934, when they were discharged, to July 1942. The trial court awarded compensation only from January 19, 1942, the date on which the Appellate court in a previous suit had held they were entitled to their positions. An appeal was again taken to the Appellate court (Kelly v. Chicago Park Dist., 341 Ill. App. 37, 92 N.E.2d 782) which held that plaintiffs were entitled to recover their full salaries during the period of wrongful exclusion, without deduction for wages earned by them in other employment. From that judgment of the Appellate court an appeal was taken to the Supreme court, 409 Ill. 91, 98 N.E.2d 738, which tersely disposed of the issues here involved in the following language:

"While we concede that the plaintiffs, as holders of civil service positions, are entitled to their salaries for the period during which they were illegally prevented from performing their duties, (People ex rel. Polen v. Hoehler, 405 Ill. 322; People v. Brady, 262 Ill. 578,) the inapplicability of the rule relating to public officers assumes new importance when considering the Appellate court's finding that plaintiffs' claims for salaries could not be reduced by earnings from outside employment."

409 Ill. at 97; 98 N.E.2d at 742. Thus, the court affirmed the Appellate court's decision that the plaintiffs were entitled to their salaries from the date of

discharge, but reversed that portion of the court's order holding that the plaintiffs' claims for salaries could not be reduced by earnings from outside employment.

Under the law of this state, therefore, plaintiff is entitled to the salary of the office from the date of his certification, December 15, 1951, to the time of his actual appointment, September 24, 1952. Inasmuch as plaintiff testified that he had no earnings from other employment and there is no evidence to the contrary, that question is not an issue in this case.

The city argues that plaintiff was under duty to mitigate damages by seeking employment. Plaintiff says that throughout the period in question he was seeking appointment as a sergeant in the police department and pending that, seeking to be reinstated as a patrolman. What he says is borne out by his letter of July 19, 1951, the reply of the Secretary of the Commission of August 7, 1951, the certification of plaintiff's name on the patrolman's list of February 25, 1952, and by his own testimony of repeated attempts to procure his appointment as sergeant or his reinstatement as a patrolman. It appears from the record that no action was taken by the city because of some doubt on the part of city officials as to whether an appointment should be made, in view of the fact that plaintiff was not on active duty at the time appointments to sergeant were made. This is understandable, but whatever validity this position may have had in the minds of the city officials was finally disposed of favorably to plaintiff by the mandamus order of July 30, 1952.

The judgment of the trial court is affirmed.

Affirmed.

McCORMICK and DEMPSEY, JJ., concur.