CLARA HARDING, Appellee, v. CITY OF DES MOINES, Appellant.

MUNICIPAL CORPORATIONS: Officers—Salary of Wrongfully Discharged Policeman. A city is not liable to policemen for the salary of which they have been deprived during a period of wrongful discharge by the civil service commission, when the city has actually paid said salary to other policemen, even though it be impossible to point out the particular policemen to whom said salary has been paid. The principle is that the public may not be compelled to pay twice for the same service.

*Appeal from Polk District Court.*—J. D. WALLINGFORD, Judge.

MAY 9, 1922.

APPEAL from judgment of the district court in favor of policemen who sued to recover salaries they did not receive between January 23, 1915, the date of their dismissal from the force, under orders of the civil service commission, and July 1,

1917, the date of their reinstatement on the force, by decree of court, the amount of the judgment being $3,072.40.—*Reversed.*

*Charles W. Lyon, Edwin J. Frisk, Chauncey A. Weaver,* and *Russell Jordan,* for appellant.

*Parsons & Mills,* for appellee.

ARTHUR, J.—I. Under the terms of a stipulation, two actions, Tyler Harding v. City of Des Moines and A. J. Butin v. City of Des Moines, presenting identical issues ,of fact and law, were tried as one case in the district court, and on this appeal are to be so considered as one action, and for convenience the title is "Clara Harding, Executrix, v. City of Des Moines."

Two Civil War veterans, Tyler Harding and A. J. Butin, prior to January 23, 1915, for several years were police officers in the city of Des Moines. The chief of police of the city of Des Moines filed complaint against these two policemen, charging incompetency for service, and upon such complaint a hearing was had before the civil service commission, resulting in the general finding that the hardships of past years and the infirmities of old age had incapacitated these men for further efficient service as police officers, and an order was entered dismissing them from the police department.

Harding became a member of the police force in 1900. Butin became a member of such force in 1895. Each continued to discharge his duties as a member of such force until January 23, 1915, when each was discharged by the order above mentioned. Each appealed from the order of discharge, and a writ of certiorari was sued out, and the findings and orders of the civil service commission were reviewed in the Polk district court, and were annulled by said court; and on appeal to the Supreme Court of Iowa, each case was affirmed. *Butin v. Civil Service Com.,* 179 Iowa 1048. The *Harding* case was affirmed on stipulation June 18, 1917, following the *Butin* decision. On July 1, 1917, Harding and Butin were restored to their places on the Des Moines police force. Two years, five months, and eight days intervened between their discharge and reinstate-

ment. On the 23d day of January, 1915, the date of their dis-
charge, and continuously thereafter until the 1st day of April,
1917, the compensation of a policeman of the grade of Harding
and Butin was $82.50 per month, payable semimonthly; and on
the 1st day of April, 1917, up until after the 15th day of June,
1917, the pay of such police officers was $91 per month, paid
semimonthly. At the time of the discharge of Harding and
Butin, the police force of the city of Des Moines consisted of
about 105 men, and it has since said time been no less. The
force has been kept up to practically the full quota of men
during all of the time since the 23d day of January, 1917; and
immediately following the discharge of Harding and Butin,
other men were appointed and served and were paid by the
city for their services as policemen, to keep up the force to the
full quota provided for by the police department. Following
their reinstatement, Harding and Butin made demands upon
the city council of the city of Des Moines, in writing, for the
payment of their salaries during the time they were deprived
of their offices, which claims were denied by the city council.
On August 17, 1917, Harding and Butin instituted these suits
against the city of Des Moines for the recovery of their salaries
alleged to be due them during the periods of their suspension
from the police force, which suits were consolidated, as above
mentioned, and tried in the Polk district court, to the court
without a jury, and judgment entered in their favor in the
sum of $3,072.40, with interest and costs, from which judgment
this appeal is prosecuted.

Errors relied upon for reversal in the entering of judgment
against the city are:

(1) The civil service commission is a distinct and inde-
pendent branch or department of local government, carried on
under and authorized by special legislative act, and the city is
not liable for acts of the commission performed while within
the scope of its authority.

(2) Policemen are public officers or state officers, and are
not entitled to salaries or compensation not earned.

(3) Harding and Butin were de-jure officers, while de-
facto officers acted and were paid for their services.

(4)   There is no showing in the record that Harding and Butin ever made any effort to or did at any time engage in any other employment during the period of their suspension.

(5)   If Harding and Butin have any cause of action, it is founded in tort, and not upon contract.

Counsel for the city concede that appellees were honorably discharged soldiers of the Civil War, and were entitled to the benefit of the preference statutes enacted for their protection. It must be further conceded (it was so found by the trial court) that the discharge of appellees from service was wrongful. It was, therefore, an invasion of their rights. Appellant's position, stated briefly, is that it did nothing to cause the invasion of appellees' rights, and was powerless to control it, and consequently that it cannot be made to respond in damages. Counsel for the city argue that the city did not discharge Officers Harding and Butin from the police department; that the city was shorn of that power when the local police department became a part of the classified' civil service regime, under legislative acts in Code Supplement, 1913, Sections 1056-a15, 1056-a16, and 1056-a32(b).

Appellees urge that:

(1)   Being honorably discharged soldiers of the Union Army of the Civil War, they were entitled to protection of the statutes Sections 1056-a15, 1056-a16, and 1056-a32(b).

(2)   The order of the civil service commission discharging appellees was annulled on certiorari hearing provided by statute.

(3)   Appellees' rights to the offices carried the right to compensation of the offices during the time they were suspended.

Appellees say that, the action of the civil service commission discharging them from service having been adjudged void and annulled, they never ceased to be policemen: that is to say that, the order of discharge being annulled, they were legally all the time members of the police force, but their compensation was not paid.

It may be stated as the general rule that the right to the possession of an office carries with it the right to the emoluments of such office.  *McCue v. County of Wapello*, 56 Iowa

698.  See, also, Code Sections 1222, 1223.  Many cases from other jurisdictions might be cited, holding to the same effect.

II.  Ordinarily, a de-jure officer may sue a de-facto incumbent who has deprived him of his rights, and recover the salary of the office for the period during which he has been deprived of the office by the de-facto incumbent.  *McCue v. County of Wapello,* supra; Code Sections 1222, 1223.

In most cases where the salary pertaining to an office has been involved, the issue has been between an officer *de jure* and an officer *de facto,* following a controversy as to which party was entitled to the lawful possession of the office.  The instant case is not such a suit.

As excuse, perhaps, for not bringing suit against policemen who were appointed when appellees were discharged, for the salaries as de-facto officers, counsel for appellees present the situation with good logic, in substance that the nature of the office was such that, although the quota of 105 policemen was filled when appellees were discharged, no particular appointees were or could be singled out as de-facto successors of appellees; that, in the instant case, where the police force consisted of a number of men, the men appointed when appellees were wrongfully discharged cannot be said to be their successors.  *City of Houston v. Estes,* 35 Tex. Civ. App. 99 (79 S. W. 848).

But such situation, if it be conceded, of impossibility of identifying men appointed when appellees were discharged as de-facto officers, holding places which appellees were entitled to the possession of, is not proper basis for recovery against the defendant city of the salary of which appellees were deprived.

III.  Manifestly, the defendant city would not be liable for salaries or in damages for loss of salaries to appellees, in the absence of allegation and proof that it caused or was instrumental in causing their discharge from service.  That leads to the pertinent inquiry:  What did the defendant city have to do with the discharge of Harding and Butin?  It is true that the chief of police of the city of Des Moines filed complaint against these two men, charging incompetency.  A hearing was had on the charges, before the civil service commissioners.  It may be assumed, as provided by statute, that the chief of police,

in filing complaint against Harding and Butin, did not act at the instance or direction of the defendant city, through its council. The statute creating the civil service commission and defining its powers and duties provides for the filing of complaint by the chief of police against members of the police department, such as were filed against Harding and Butin, and provides for hearing the charges by the civil service commissioners. Section 1056-a32. The chief of police filed the charges, under authority of the statute. It is not claimed that the proceedings before the civil service commissioners were not regular, and in accordance with the statute in every way. In other words, Harding and Butin were discharged under proceedings authorized by the statute, and the statute was followed. Their discharge, on review by the Polk County district court, was held to be wrongful, because the charges of incompetency were not sustained by the evidence, and not because of excess of jurisdiction or irregularities in the proceedings.

IV. While, as above adverted to, no particular appointees could be singled out as the successors of appellees, as de-facto officers supplanting appellees while appellees were suspended, still, the police force having been filled up to the full quota, there were officers who took appellees' places and were paid for their services; and the question is whether the city, having acted in good faith in the payment of officers who took their places, can be held liable on the claims of appellees for salary not earned. The city paid for services rendered which appellees would have rendered, had they been continued in the service. In other words, Can the city be held liable twice? Under our holding in *Brown v. Tama County*, 122 Iowa 745, this central and controlling question must be answered in the negative. In the *Brown* case, we held, in effect, as stated in the syllabus:

"Where a county pays an officer *de facto*, during his incumbency, the salary provided by law, the rightful officer, after obtaining possession of the office by judgment of court, cannot recover from the county the salary for the same period."

See, also, *McCue v. County of Wapello*, supra.

While there is lack of harmony in decisions of courts of other jurisdictions, and courts of high authority hold to the

contrary, a decided preponderance of the authorities sustains our holding in the *Brown* case, to the effect that, by payment of a salary to a de-facto officer, the right of the de-jure officer to collect his salary from a municipality is lost. In *Thompson v. City & County of Denver*, 61 Col. 470 (158 Pac. 309), a de-jure officer was held not entitled to recover from the municipality a salary for the period during which he had been wrongfully excluded from office, where the salary had been paid to the de-facto officer, although the exclusion covered a period of over two years, while an appeal was pending from the decision of the police board discharging him from service. The Colorado court said:

"The rule adopted in this state is based on public policy, to the effect that the people cannot be compelled to pay twice for the same service."

Holding to the same effect, see *State v. Milne*, 36 Neb. 301 (19 L. R. A. 689); *Stearns v. Sims*, 24 Okla. 623 (24 L. R. A. [N. S.] 475).

Counsel for appellees rely largely on *Jackson v. Independent School Dist.*, 110 Iowa 313, and other cases holding similarly. We do not regard the *Jackson* case as being in point. There the action was on contract. Jackson entered into a written contract with the district, under which she was employed to teach for a certain period, and was wrongfully discharged by the board of directors. We think the instant action cannot be considered an action on contract; but that the remedy available to appellees, if any, must be an action in tort for damages, and not to collect salaries past due. *Fitzsimmons v. City of Brooklyn*, 102 N. Y. 536; *City of Hoboken v. Gear*, 27 N. J. L. 265. In the *Fitzsimmons* case, the New York court said:

"We have often held that there is no contract between the officer and the state or municipality, by force of which the salary is payable. That belongs to him as an incident of his office."

V. Counsel for appellees urge as controlling that these men belong to a class that were favored in the law; that special statutes had been passed for their protection; and that such preference statutes were not observed, but were ignored; that

observance of the statutes compels the payment to these honorably discharged soldiers by the defendant city of salaries during their suspension from office; and that the proper and liberal construction which should be given these statutes, to effect the purposes of preference for which they were intended, would place liability on the defendant city for the payment to appellees of the salary of which they were deprived by wrongful suspension from their positions on the police force. We think such position is not tenable. These men were not discharged from service because they were ex-soldiers, nor were they reinstated because they were ex-soldiers. They were reinstated the same as they would have been had they not been ex-soldiers, because the charges laid against them of incompetency were not sustained by proof. We can see no difference, so far as liability of the city is concerned, between the instant case and one where the men suing for salary would not be ex-soldiers.

We reach the conclusion that the city is not liable. Accordingly, the judgment of the trial court must be and is reversed.— *Reversed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.