BOWLIN *v.* FRANKLIN COUNTY.*

(Division B.  Feb. 4, 1929.  Suggestion of Error Overruled March 4, 1929.)

[120 So. 453.  No. 27654.]

*Corpus Juris-Cyc. References: Officers, 46CJ, section 279, p. 1028, n. 27; section 377, p. 1060, n. 72; As to right of *de facto* officer to salary of office, see annotation in 32 L. R. A. (N. S.) 949; L. R. A. 1918F, 587; 22 R. C. L. 599; 3 R. C. L. Supp. 1272; 4 R. C. L. Supp. 1472.

C. F. Cowart, for appellant.

V. H. Torrey, for appellee.

ANDERSON, J. Appellant brought this action as bird, game, and fish warden of Franklin county against appellee, Franklin county, to recover of the latter the sum of two hundred dollars alleged to be due him by the county for his services as such warden for the months of January, February, March, and April, 1928, at a salary of fifty dollars per month.

At the close of the evidence, the circuit court directed a verdict for appellee, and judgment was accordingly entered. From that judgment appellant prosecutes this appeal.

At the May, 1927, meeting of the board of supervisors of Franklin county, J. Q. Jones was by the board, under the authority of section 16, chapter 178, of the Laws of 1926 (Hemingway's Code 1927, section 5384), appointed bird, fish, and game warden for that county, and his salary was fixed at fifty dollars per month. Jones served in that capacity until October, 1927, when he moved out of the county, and the office was declared vacant by the board of supervisors, and appellant was appointed by the board to serve out Jones' unexpired term. The statute provides a term of two years for bird, fish, and game wardens. Appellant served in that capacity until the 1st day of January, 1928, when the board conceived that his term of office had expired, and elected in his stead T. M. Barland for a term of two years beginning the 1st day of January, 1928. Thereupon Barland, with appellant's knowledge, took charge of the office, and served as such warden during the months of January, February, March, and April, 1928, as a part of his two-year term. The evidence showed without conflict that appellant knew that Barland was in charge of the office

during those months, performing its duties, and that appellant neither performed any of the duties of the office nor claimed the right to do so. In other words, that for those months appellant relinquished the office to Barland and made no claim thereto until the expiration of the four months, when he filed a claim for his salary before the board of supervisors, which was disallowed. The evidence showed that, in addition to performing the duties of the office during the four-month period, Barland received from the board the salary therefor—fifty dollars a month.

Appellant contends that during this four-month period he was the *de jure* fish and game warden of Franklin county, and therefore entitled to the salary that went with the office, while the county's position is the converse.

The view we take renders it unnecessary to decide whether appellant was *de jure* warden or not. Barland was shown without conflict in the evidence to be the *de facto* warden. He was in charge of the office and performed its duties and received the salary of the office; appellant was excluded from the office and performed none of its duties. Even though appellant was wrongfully excluded from the office, the *de facto* officer performing its duties was, as between himself and the county, entitled to the salary of the office. The supreme court so held in *McAffee* v. *Russell*, 29 Miss. 84, loc. cit. p. 97. In passing on this question, the court said in that case:

"In addition there is another very obvious reason why a mandamus should not have been awarded in this cause.

"The appellee showed, by his petition, that he did not take possession of the office, or enter upon the discharge of the duties, until it was surrendered to him by Swann in October, 1854. If it were fully conceded, therefore, that he was entitled to the office and its emoluments from the date of his election, he would, nevertheless, not have the shadow of a claim against the state for salary for the

intervening period from his election to his accession to the office. He had rendered no services, and therefore could found no claim for remuneration. If he was wrongfully kept out of office, it was certainly no fault of the state. He was, therefore, not entitled to remuneration upon the principle of indemnity. The legislature had conferred upon him the office in question; his title was contested, and he was kept out by the incumbent. The courts were open to him for the redress of his injuries; and having failed to pursue the remedies provided by law, he must be left to the consequences of his own neglect.''

The authorities are not in accord on this question. Some of the courts hold that a *de jure* officer wrongfully excluded from his office is entitled to recover from the political subdivision of the state of which he is an officer the salary attached to the office, although a *de facto* officer meanwhile has occupied the office, discharged the duties thereof, and has been paid such salary. 22 R. C. L. 541, 542, section 240. But in a large number of jurisdictions the contrary rule has been adopted, and instead of the principle declared that, if a person is wrongfully suspended or excluded from office and salary during the time of such suspension or exclusion has been actually paid to a *de facto* officer, the officer rightfully entitled to the office cannot recover the salary during such period, and that this is true notwithstanding the fiscal officer, paying the salary of the office, may have known at the time that the title to the office was in question, and although the *de facto* officer is insolvent. In other words, the rendition of official services must precede the right to demand and recover the compensation attached to the office, and therefore the payment of the salary of an office to a *de facto* officer, made while he is in possession of the office, is a good defense to an action brought against the public by the *de jure* officer to recover the same salary. The reason of the rule that payment to a *de facto* officer is a bar to the right of a *de jure* officer to the salary is that

disbursing officers charged with the duties of paying official salaries should have the right to rely on the apparent title of an officer *de facto* and treat him as an officer *de jure* without inquiring whether another has a better right to the office; otherwise the public service would be greatly embarrassed and its efficiency impaired. He should not be required to determine the question as to which of the two contestants is entitled to the office and pay the salary to the one who, in accordance with his judgment, is entitled thereto. He should not be required to go beyond ascertaining who is in charge of the office and performing its duties. The public welfare requires that the duties and obligations going with a public office should be continuously discharged so that there shall be no intermission in the performance of the services to the public for which the office was created. The disbursing officers can better carry out this policy if justified in paying the salary to the *de facto* officer actually performing the duties of the office, and, when this is done, the public cannot be again compelled to pay the salary to the *de jure* officer. 22 R. C. L. 543, 544, section 241. This is the view our court took in *McAffee* v. *Russell, supra,* and we think it was a sound view and one that will better promote the public interest.

*Affirmed.*