E. W. CLARK, Appellee, v. CLYDE L. HERRING et al., Appellants. No. 42618.

APRIL 2, 1935.

REHEARING DENIED OCTOBER 22, 1936.

Edward L. O'Connor, Attorney General, L. W. Powers, Special Assistant Attorney General, and Walter F. Maley, Assistant Attorney General, for appellants.

Senneff, Bliss & Senneff, and Addison M. Parker, for appellee.

RICHARDS, J.—The petition in this action of certiorari was

filed in the district court of Polk county on July 26, 1933. The plaintiff-appellee was the commissioner of insurance of the state of Iowa, and the defendants were the members of the executive council of the state of Iowa. On July 28, 1933, being the time set for the hearing on the petition, the defendants filed a special appearance challenging the jurisdiction of the court, which on the same day was overruled, and by order of the court a writ of certiorari and restraining order issued and were served on the defendants; the writ being returnable on August 10, 1933. On the return day, appellants filed their return on the writ showing the following: That on June 30, 1933, the executive council received a letter from W. R. Baker, making charges against the conduct of plaintiff as commissioner of insurance, which letter was filed with the executive council, under date of June 29, 1933; attached to said letter, a copy of which was attached to the return, was a memorandum relating to the alleged wrongful acts of plaintiff in connection with the Royal Union Life Insurance Company, that prior thereto, complaints having been made to the Governor, who was chairman of the executive council, concerning the merger of the Modern Brotherhood of America and the Independent Order of Foresters, and the conduct of the plaintiff in connection therewith, one John Inghram had been commissioned to investigate and report concerning said matter; said Inghram after investigation made a report which was incorporated in a public statement issued by the Governor on July 18, 1933, and on that date brought to the attention of the executive council, a copy of which report was attached to the return; that on July 27, 1933, the executive council received from the above-mentioned Baker a letter, a copy of which was attached to the return, and attached to said letter was a paper designated "Special Allegations of Misconduct on the part of E. W. Clark, Commissioner of Insurance of the State of Iowa," and a copy of the same was attached to the return; that on July 21, 1933, the executive council adopted a resolution, a copy being attached to the return, fixing a time for hearing upon the various charges filed with it against appellee and directing the said E. W. Clark to appear before the executive council on July 31, 1933, at 10 o'clock a. m., and extending to the said E. W. Clark, as commissioner of insurance, an opportunity to make at said time a full statement concerning these transactions and his knowledge thereof; that on July 28, 1933, in the city of Des

Moines, Iowa, a written notice was served by the executive council upon appellee notifying him that written charges have been filed with the executive council of the state of Iowa, alleging irregular conduct by appellee as commissioner of insurance in connection with the affairs of the Royal Union Life Insurance Company and the merger of the Modern Brotherhood of America and the Independent Order of Foresters, and other irregularities with the management and conduct of said office, and notifying appellee that said charges were on file with the secretary of the executive council and that the executive council had adopted a resolution fixing a time and place for the hearing thereon at 10 o'clock a. m. on the 31st day of July, 1933, in the office of the Governor of the state of Iowa at the state capitol building; and notifying appellee that he may appear at said time and place and make defense to said charges, and that a copy of said charges may be procured from the secretary of the executive council, and that a copy of the resolution fixing the time for the place and hearing is attached to the notice; attached to the notice was a copy of the resolution, as stated in the notice. At the time of the return of the writ defendants filed a motion to strike and quash. On September 5, 1933, a trial was had on the return of the writ and the motion. On November 16, 1933, the court entered an order, judgment, and decree that defendants' motion to strike and quash be overruled, and that the writ of certiorari be sustained, and that the defendants be restrained and enjoined from further proceedings in the premises, with judgment against defendants for costs. From this order and judgment defendants have taken this appeal.

The respects in which appellee, in support of the writ, claims the appellants exceeded their proper jurisdiction, and otherwise acted illegally, we proceed to set out.

**III** It is asserted by appellee that the charges or inquiries attempted to be made against him, for any misdemeanor or malfeasance in office as commissioner of insurance, as appellants were attempting to do under sections 1114 and 1115 of the 1931 Code of Iowa, were in violation of section 20 of Article III of the Constitution of Iowa, for that appellee, being a state officer, can be removed only by way of impeachment for a misdemeanor or malfeasance in office, and cannot be removed through procedure under said Code sections. Said section of the Constitution is in the following words:

"Officers subject to impeachment—judgment. Section 20. The Governor, Judges of the Supreme and District Courts, and other State officers, shall be liable to impeachment for any misdemeanor or malfeasance in office; but judgment in such cases shall extend only to removal from office, and disqualification to hold any office of honor, trust, or profit, under this State; but the party convicted or acquitted shall nevertheless be liable to indictment, trial, and punishment, according to law. All other civil officers shall be tried for misdemeanors and malfeasance in office, in such manner as the General Assembly may provide."

That the words "other State officers" of this section, designating those officials not specifically named who shall be liable to impeachment, do not include appellee as commissioner of insurance, is not even doubtful.

The office of commissioner of insurance was not created until the session of the Thirty-fifth General Assembly (chapter 146). He is the head of what is known as the Insurance Department of Iowa, has general supervision, control, and direction over all insurance business transacted in the state, is required to see that the laws of the state relating to insurance are enforced, and becomes receiver of any failed insurance company, and performs other incidental duties including the making of an annual report to the Governor as to the general conduct and condition of life insurance companies. The office is not elective, but appointive by the Governor. The statute (Code 1931, section 8605) provides that the Governor shall, within sixty days following the organization of the regular session of the General Assembly in 1927, and each four years thereafter, appoint, with the approval of two-thirds of the members of the Senate in executive session, a commissioner of insurance. Thus it appears that the office of commissioner of insurance is not more than a ministerial agency of the executive department. In interpreting the meaning of the words "other State officers" subject to impeachment, as applied to an appointive head of a mere ministerial agency, it is proper to take into consideration the ponderous nature of an impeachment proceeding, that it first must occupy the time and attention of the House of Representatives which has the sole power of impeachment, and must then occupy the time and attention of the Senate as a court of impeachment. The obstruction of the lawmaking functionings of the legislature, on account

of multiplied impeachment proceedings, if impeachment alone can sever the relations with the state of such an officer, strongly suggests that the practical result would be an impossibility of removal in most instances of misdemeanor or maladministration in office. The long periods between the biennial sessions of the general assembly would be an open season for maladministration in such inferior offices as the one appellee held, unless as each case arose there were imposed on the state the large expenditures incident to a special session. We cannot interpret this article as containing intendments of such gross absurdities. We hold that appellee was not a state officer liable to impeachment by the General Assembly, but was an officer to be tried for misdemeanors and malfeasance in office in such manner as the legislature has provided by statute. In State ex rel. Hewitt, 3 S. D. 187, 52 N. W. 875, 16 L. R. A. 413, 44 Am. St. Rep. 788, a trustee of the agricultural college of South Dakota, appointed for a fixed term, claimed he could not be removed except by impeachment on account of a constitutional provision of that state that "the Governor, and all other State and judicial officers, excepting County Judges, Justices of Peace, and Police Magistrates shall be liable to impeachment," etc. The court held that the term "State officers", as used in said section, includes only such general officers as immediately belong to one of the three constituent branches of the state government. See, also, State ex rel. Hamilton v. Grant, 14 Wyo. 41, 81 P. 795, 798, 82 P. 2, 1 L. R. A. (N. S.) 588, 116 Am. St. Rep. 982, and State v. Sanchez, 32 N. M. 265, 255 P. 1077.

Another claim of appellee is that sections 1114 and 1115 of the Code of 1931, under authority of which defendants were proceeding, are unconstitutional, being violative of section 1 of Article I, and section 9 of Article I, of the Constitution of Iowa, and violative of the Fourteenth Amendment of the Constitution of the United States. The specific point raised in argument by appellee is that the two sections of the 1931 Code mentioned violate "the due process of law" provisions in the constitutional sections mentioned, in that neither of these Code sections contains any provisions for the giving of notice to the official investigated for removal. It is true neither of these sections contains any provision for notice. Appellee's conclusion therefrom is that the appellants were depriving appellee of property

without due process of law. These two Code sections are as follows:

"1114. Appointive state officers. Any appointive state officer may also be removed from office by a majority vote of the executive council for any of the following causes:

"1. Habitual or wilful neglect of duty.

"2. Any disability preventing a proper discharge of the duties of his office.

"3. Gross partiality.

"4. Oppression.

"5. Extortion.

"6. Corruption.

"7. Wilful misconduct or maladministration in office.

"8. Conviction of felony.

"9. A failure to produce and fully account for all public funds and property in his hands at any inspection or settlement.

"10. Becoming ineligible to hold the office.

"1115. Subpœnas—contempt. The executive council, in any investigation held by it, may issue subpœnas for witnesses and for the production of records, books, papers, and other evidence. If a witness, duly subpœnaed, refuses to appear, or refuses to testify, or otherwise refuses to comply with said subpœna, such fact shall be certified by such council to the district court or judge of the county where the hearing is being held and said court or judge shall proceed with said refusal as though the same had occurred in a legal proceeding before said court or judge."

To sustain his proposition appellee asserts that a public office is property within the meaning of these constitutional provisions. In Iowa, the question has been fully considered in our precedents, and is foreclosed against appellee's contention. In Shaw v. Marshalltown, 131 Iowa 128, 134, 104 N. W. 1121, 1124, 10 L. R. A. (N. S.) 825, 9 Ann. Cas. 1039, the act of the Thirtieth General Assembly (chapter 9), providing a preference of honorably discharged soldiers and sailors in the appointment, employment and promotion in the public service over others of equal qualification, was under attack as violative of the Fourteenth Amendment of the Federal Constitution. In the course of the opinion this court stated:

1230

"A public office has in it no element of property, but it is rather a personal public trust, created for the benefit of the state, and not for the benefit of the individual citizens thereof. Nor are the prospective emoluments of a public office property in any sense, for the salary or other perquisites may be reduced or otherwise regulated by law at all times, unless such change is forbidden by the Constitution." The court also said: "The right to hold office can be no more a natural and a personal right, nor more sacred, than the right of suffrage, and it is the general holding of the courts that the right of suffrage is not a natural and personal right, but a political and civil right. It owes its existence to the constitution of civil government and not to the personality of the individual; nor does the right necessarily follow and become an attribute of citizenship, as we have already pointed out. It is a right which is conferred, withheld, or limited at the pleasure of the people, acting in their sovereign capacity. Once granted, it may be taken away by the same power that granted it, and it is therefore not a natural right, which is held to be inalienable like the rights of conscience."

The court cites among other cases Taylor v. Beckham, 178 U. S. 548, 20 S. Ct. 890, 900, 44 L. Ed. 1187, from which the following is quoted:

"The view that public office is not property has been generally entertained in this country. * * * In Crenshaw v. United States, 134 U. S. 99, 104, 10 S. Ct. 431, 432, 33 L. Ed. 825, 827, Mr. Justice Lamar stated the primary question in the case to be: 'Whether an officer appointed for a definite time or during good behavior had any vested interest or contract right in his office of which Congress could not deprive him.' And he said, speaking for the court: 'The question is not novel. There seems to be but little difficulty in deciding that there was no such interest or right. * * *' The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered. Nor does the fact that a constitution may forbid the legislature from abolishing a public office or diminishing the salary thereof during the term of the incumbent change its character or make it property. True, the restrictions limit the power of the legislature to deal with the office, but even such restrictions may be removed

by constitutional amendment. In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right.''

In State ex rel. Hamilton v. Grant (Wyo.) supra, it was claimed that a superintendent of a water division appointed by the Governor without concurrence of the Senate was wrongfully discharged by the Governor on account of the statute, under which the Governor proceeded, being in contravention of the Constitution of Wyoming (article 1, section 6) providing that no person shall be deprived of life, liberty, or property without due process of law. The court used the following language:

''But the notion that there may exist a property right in a public office is not generally accepted. 'The incumbent of an office has not, under our system of government, any property in it. His right to exercise it is not based upon any contract or grant. It is conferred on him as a public trust, to be exercised for the benefit of the public. * * * State v. Hawkins, 44 Ohio St. 98, 109, 5 N. E. 228, 233.' ''

The record shows that a reasonable notice was given appellee of the time and place when and where the executive council would consider the charges of malfeasance and maladministration against the appellee. The copy of the resolution served on appellee attached to the notice advised appellee that at said time and place an opportunity would be given him to make a full statement to the executive council of all transactions and his knowledge thereof. As we understand the record, the only objection made to the notice is the claim that there was a letter added to the record in the case after the notice was served. We think the notice to appellee was sufficient to enable him to present fully his side of the controversy before the executive council, and, such notice having been given, it is not necessary that we examine further into what would have been the situation as determined by the common law had the executive council proceeded ex parte.

▮▮▮ Appellee says that the executive council was violating the ''due process of law'' constitutional clauses, because ''due process of law'' means that a man is entitled to be tried before an impartial tribunal. He asserts that the executive council had prejudged his case and were prejudiced, and appellee so alleged

in his petition for a writ of certiorari. This proposition cannot be considered at all in view of an entire absence in the record of any evidence of the facts on which appellee predicates his proposition.

The conclusion to which we come in this case makes unnecessary the consideration of other points and propositions raised by appellants in resistance to the writ.

We conclude that the district court was in error in sustaining the writ and enjoining the appellants from proceeding. The writ should have been annulled and the injunction vacated. Accordingly, the case is reversed.—Reversed.

All Justices concur, except ALBERT, J., dissenting, and POWERS, J., taking no part.