1354

R. J. HILD, appellee, v. POLK COUNTY et al., appellants.

No. 47916.

(Reported in 49 N.W.2d 206)

SEPTEMBER 18, 1951.

REHEARING DENIED NOVEMBER 16, 1951.

Clyde E. Herring, County Attorney, and A. R. Shepherd, Assistant County Attorney, for appellants.

Doran, Doran, Doran & Erbe, of Boone, and Hextell, Mitchell & Beving, of Des Moines, for appellee.

HAYS, J.—Plaintiff, by a suit in equity, seeks to recover the salary as a member of the Board of Supervisors of Polk County, Iowa, which had been suspended by an order of court pending the trial of an action to remove him from office on account of alleged misconduct. There was a judgment and decree for plaintiff and the defendants have appealed.

The evidentiary facts are not in dispute. In 1946 appellee was re-elected as a member of the Board of Supervisors of Polk County for a three-year term commencing January 1, 1947. He qualified and served as such member until August 15, 1947. On this date, an action entitled "State of Iowa ex rel. Carroll O. Switzer, County Attorney of Polk County, v. R. J. Hild", being case No. 58992, Polk County, was commenced. This case asked for the removal from office of the said Hild, charging misconduct in office. Specifically, the petition alleged the indictment by the Polk County grand jury of the said Hild on charges of obtaining money by false pretenses. There were two indictments, being criminal cases Nos. 37247 and 37228, Polk County, Iowa. This petition was filed under the provisions of chapter 66, Code of 1950. On the same date, under authority granted by section 66.7, an order was entered suspending Hild from office, which was served immediately. On September 2, 1947, an original notice in the case was

served as required by section 66.6. On August 26, 1947, one Rex L. Graber was appointed as a member of the board as provided by section 66.19. He qualified and served until November 9, 1949, at which time one Orville E. Armstrong, who had been elected at the November election to finish the term, qualified and served until the expiration thereof. Both Graber and Armstrong received full compensation for their services.

Criminal cases Nos. 37247 and 37228 were transferred to Boone County for trial. Case No. 37228 was tried to a jury. There was a verdict of guilty and sentence was pronounced accordingly. On appeal to this court the judgment was reversed and the cause remanded. State v. Hild, 240 Iowa 1119, 39 N.W.2d 139. No further trial was had thereon and on April 3, 1950, cases Nos. 37247 and 37228 were dismissed by the court. Criminal case No. 37600, Polk County, being an indictment charging Hild and others with conspiracy, and which was returned subsequent to August 15, 1947, was dismissed by the court in June 1950.

In case No. 58992, being the removal action, no pleading was filed by Hild and no trial was ever had thereon. On December 17, 1949, appellee filed a motion therein to set aside the order of suspension and to dismiss the action. This motion was submitted at the time of the trial in the instant case. In June 1950, appellee filed a claim with Polk County for the salary in question which was denied and this case was commenced on December 4, 1950. In ruling upon the motion to dismiss case No. 58992 the trial court refused to set aside the order of suspension, holding it to be now moot, but did dismiss the case at appellants' costs. Subsequent thereto the trial court entered a decree in the instant case, as above-stated.

Appellants assign six propositions as a basis for reversal. However, two of them present the real defenses urged to the claim and our determination thereof is determinative of this appeal. They are: (1) that payment of the salary to Graber and Armstrong constitutes a defense to appellee's claim, and (2) appellee, in not pressing for a trial of case No. 58992 on its merits, is guilty of laches such as to bar a recovery.

■■ I. Does payment to Graber and Armstrong constitute a defense to appellee's claim? The trial court held that it did not and we agree.

We are dealing with the suspension of an elected public official, pending a trial on the merits of an action to remove him from office on account of misconduct therein. The entire proceedings are governed by chapter 66, Code of 1950, which is entitled "Removal from Office". All parties agree that in matters dealing with public office and public officials, not constitutional in their origin, the legislature is supreme and may, generally speaking, deal with them as its wisdom may dictate. As stated in City of Clinton v. Cedar Rapids & Missouri River R. Co., 24 Iowa 455, 475: "Municipal corporations owe their origin to, and derive their powers and rights wholly from, the legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and control."

The interpretation to be given to section 66.9 is the controlling factor upon this question. Section 66.9 provides:

"An order of the district court or of a judge thereof suspending a public officer from the exercise of his office, after the filing of a petition for the removal from office of such officer, shall, from the date of such order, automatically *suspend* the further payment to said officer of all official salary or compensation *until* said petition has been dismissed, or *until* said officer has been acquitted on any pending indictments charging misconduct in office." (Italics ours.)

At the time the decree appealed from was entered, the petition in case No. 58992 had been dismissed, as also had been the three indictments. Thus appellee is in a position to claim the benefits, if any, provided in said section.

Appellants assert that nowhere in chapter 66, and specifically in section 66.9, is there any provision made for a payment to the suspended official of the withheld salary, upon the dismissal of the petition for removal or of the indictments against the official; that the county having paid the salary to Graber and Armstrong, the common-law rule is applicable. This rule, as contended for by appellants, is stated in annotation in 163 A. L. R. 760, 761, as follows:

"With certain exceptions based upon special facts, statutes, civil service laws, or express adjudications, the majority of

the later cases announce, recognize, or confirm the rule that payment of the salary attached to an office or position by a political or governmental entity to a de facto officer or employee who performs the functions and duties thereof is a good defense in an action or proceeding against it * * * for the equivalent amount of salary so paid."

This court recognizes this rule and has applied it on numerous occasions. The reason for the rule is that in dealing with a de facto officer the public and the governmental agencies are protected and having paid the salary to such de facto officer it would be against public policy to require payment a second time. Several Iowa cases are cited in support of this rule, among them being Brown v. Tama County, 122 Iowa 745, 98 N.W. 562, 101 Am. St. Rep. 296, Harding v. City of Des Moines, 193 Iowa 885, 188 N.W. 135, and McClinton v. Melson, 232 Iowa 543, 4 N.W.2d 247. None of the cited cases were brought under the provisions of chapter 66. The Brown case involves an election contest and is a question of salary paid to the de facto officer and then a suit for the same by the de jure official. The Harding case involves a civil service case, and, while recovery was denied, under the above rule, statutes changing the same are now in force. Section 365.27, Code 1950. The McClinton case involved the soldiers' preference statute and, in the absence of any statute to the contrary, the common-law rule as announced in the Brown case was followed. We have examined all of the Iowa authorities cited by appellants and find none to be in point.

We think section 66.9 specifically covers the instant case and abrogates the common-law rule, if otherwise applicable. Chapter 66 has long been the law of this state, except as to section 66.9 thereof, and we may assume that the common-law rule was applicable. Section 66.9 was enacted as section 2, chapter 23, Acts of the Forty-fifth General Assembly. It deals with but one question, namely, the salary of a suspended official during the suspension period. Presumably, when an existing law is changed or added to some reason exists therefor and the logical answer is that the existing rule was unsatisfactory or no longer expressed a sound rule of public policy.

Section 66.9 says "* * * automatically *suspend* the further payment * * * *until* * * *." (Italics added.) According to Webster's New International Dictionary, Second Edition, "suspend" means "To hold in an undetermined or undecided state, awaiting fuller information * * *." "Until", by the same authority, means "Up to the time that or when * * *." Thus, in accordance with the provisions of section 4.1(2), Code of 1950, we think the plain meaning to be given section 66.9 is that "the suspension order shall automatically hold the salary in abeyance up to the time that the petition for the removal of the official has been dismissed, or up to the time that the said official has been acquitted on any pending indictments charging misconduct in office." In a legal sense at least, both of the above contingencies had happened at the time of the decree herein. While section 66.7, providing for the suspension of the official, and section 66.8, providing that the suspended official shall not exercise the functions of the office during the suspension, are stringent and summary in effect, yet as a matter of protection for the public they are sound. Section 66.19, providing for a temporary occupant of the office during the suspension and allowing such occupant the salary provided for the office, is necessary if the public business is to continue. But where it develops, as in the instant case, that the charges are dismissed, which in legal effect says that the official had done nothing to warrant his removal from office, it would be unreasonable to hold that, notwithstanding such dismissal, said official has, by the mere filing of the petition asking for a removal, been deprived of all that made the office of any pecuniary value. We think that by the enactment of section 66.9 the legislature intended that such official should be paid the salary of the office even though it resulted in the public paying twice for the service.

II. Was appellee guilty of laches such as to bar a recovery? The laches, if any, is based upon the fact that appellee, after the commencement of case No. 58992 in August 1947 did not press for an immediate trial, and did nothing therein until in December 1949 when he filed the motion to dismiss the same.

Section 66.5 provides for the filing of the petition and requires the setting forth of the charges therein. It further provides that such charges shall be deemed to be denied and requires no

pleading upon the part of the defendant. Thus upon the filing of the petition and the accrual of the appearance date the case is at issue and ready for trial. The burden is upon the State to establish facts to warrant and justify an order of removal. State ex rel. Fletcher v. Naumann, 213 Iowa 418, 239 N.W. 93, 81 A. L. R. 483. Appellants cite Sinclair v. Allender, 238 Iowa 212, 228, 26 N.W.2d 320, 329, and quote therefrom as follows:

"Mere delay in the prosecution of an action, or lapse of time alone in asserting a claim, is not ordinarily laches. But where the demand is unduly stale, and, in addition to the lapse of time, the delay and postponement of action are unfair to the opposing party, and he has been damaged or prejudiced thereby and it would be inequitable to enforce the claim, the defense of laches should be allowed and enforced."

Appellants then state that Polk County has been prejudiced by the delay in not having a trial on the merits on case No. 58992, in that during all of the ensuing period of two years and four months it was paying the appointed officials, and if liable in the instant case it means a double payment of many thousands of dollars.

Among other cases cited by appellants on this question is United States ex rel. Arant v. Lane, 249 U. S. 367, 372, 39 S. Ct. 293, 294, 63 L. Ed. 650, 652. There a superintendent of parks had been removed from office. Some twenty months later he brought mandamus to compel his reinstatement. The court held he was guilty of laches, saying, "When a public official is unlawfully removed from office * * * he should promptly take the action requisite to effectively assert his rights.". We have no quarrel with the above pronouncements, but they are not applicable to the instant case. Appellee, as a defendant in case No. 58992, was in a purely defensive position. He had not commenced an action and was asserting no claim. At no time was he under any duty to Polk County to press for an immediate hearing on the charges. The State had commenced the action under section 66.1. The case was at issue upon the arrival of the return date, and if the plaintiff therein was content to dawdle and allow the case to drag along for over two years without a hearing thereon, and is thereby liable

in a larger sum than it would have been but for the delay, plaintiff is responsible therefor. The old saying of "he who dances must pay the fiddler" is very apropos. There being no duty upon appellee to proceed in case No. 58992, his failure to do so cannot be said to be laches.

The other propositions advanced by appellants as a basis for reversal are without merit. Finding no error in the decree of the trial court the same should be and is affirmed.—Affirmed.

BLISS, WENNERSTRUM, MULRONEY, SMITH, and THOMPSON, JJ., concur.

SMITH, J., specially concurs.

GARFIELD and MANTZ, JJ., dissent.

SMITH, J. (specially concurring)—I concur in the opinion but think some additional comment proper.

The case for reversal seems to rest on an assumption that an official may never collect the salary of his office except for the time he has been in active possession thereof and that the state or municipality may never be required to make double payment. This theory originated in cases of contest between individuals for possession of the office in which cases the public was in effect a disinterested third party, not responsible for the situation, and entitled to be protected in dealing with the person in actual possession of the office with color of authority.

That is the clear basis of the opinion in Brown v. Tama County (122 Iowa 745, 750 et seq.), in which it is said: "It is not to be denied that this rule may sometimes result in hardship to one who has been wrongfully excluded from an office * * * but the hardship comes not from any wrong which has been done him by the state, county, or city whose officer he is, but from the * * * fault of the individual who, without sufficient grounds, has disputed his right and taken the emoluments which rightfully he should have received. * * * The party to whom such a contest brings undeserved injury or loss must look for his damages to the person who caused it." There is more that should be read, especially on page 755.

The instant case is clearly distinguishable from the Brown case and others in which that reasoning has been adopted. The public (State ex rel. the county attorney) was here the moving party in commencing the ouster proceedings, not a mere innocent bystander, caught between conflicting claims to the office.

The statute, in cases of this kind, authorizes suspension of the official and suspension of payment to him *until* the ouster "petition has been dismissed, or until said officer has been acquitted on any pending indictments charging misconduct in office."

Plaintiff was never removed from office. His salary was never forfeited or even suspended—only its payment was suspended *until* disposition of the charges against him. The statute authorized or required the appointment of a temporary official to function pending plaintiff's suspension. This temporary official was not a de facto but a de jure temporary officer. Plaintiff was at all times de jure county supervisor.

I think the distinction between de facto and de jure has no significance here. The statute is not in derogation of any common law which fixes the rights of de facto and de jure officers respectively claiming title to the same office. Nor can it logically be said to be declaratory of any such common law since there is here no relationship of de jure and de facto.

We have no right to assume enactment of the statute was an idle legislative gesture. It is our duty to give effect to its language if reasonably possible. Simmons Warehouse Co. v. Board of Review, 229 Iowa 191, 193, 294 N.W. 286; Dain Mfg. Co. v. Iowa State Tax Commission, 237 Iowa 531, 541, 22 N.W.2d 786. The opinion does this.

To paraphrase the language of the Brown v. Tama County case *in reverse*: Plaintiff *was* wrongfully excluded from the office and his hardship *does* come from a wrong done him by the county itself whose officer he was.

Under what seems the clear intendment of the statute the county, in commencing the ouster proceedings, assumed the burden either of substantiating the charges it preferred or of paying both the appointed temporary officer and plaintiff, whose title to the office was never terminated.

It is unfortunate that the ouster proceedings were permitted

to be so long-drawn-out, but that cannot legally be charged against plaintiff here.

GARFIELD, J. (dissenting)—Without the citation of a single precedent that supports it the majority decision compels Polk County to pay plaintiff (including interest) over $10,400 for services he never performed, services performed in good faith by Supervisors Graber and Armstrong who were fully paid by the county therefor. Thus the county is compelled to pay twice for the same service in violation of a rule of law long established in this state and without any clear legislative authority therefor.

A public office is not a right of property or contract but a public trust created for the benefit of the public. Neither are the prospective emoluments of the office property of the incumbent in any sense. Smith v. Thompson, 219 Iowa 888, 893, 258 N.W. 190, and citations (overruled upon another point in Carlton v. Grimes, 237 Iowa 912, 952, 23 N.W.2d 883, 904); Clark v. Herring, 221 Iowa 1224, 1230, 260 N.W. 436; Hull v. City of Cleveland, 79 Ohio App. 87, 70 N.E.2d 137; 42 Am. Jur., Public Officers, section 3; 67 C. J. S., Officers, section 6, page 118: "* * * no individual has an indefeasible right therein beyond the constitutional tenure and the emoluments arising out of *the actual rendition of services.*" (Italics added.)

Jayne v. Drorbaugh (1883), 63 Iowa 711, 717, 17 N.W. 433, 436, involving the salary of a county supervisor, states: "The right to compensation depends upon the performance of the duties, or at least there must be possession of the office in fact, as distinguished from the mere right of possession." This is repeated in Brown v. Tama County (1904), 122 Iowa 745, 757, 98 N.W. 562, 101 Am. St. Rep. 296.

Smith v. Van Buren County (1904), 125 Iowa 454, 460, 101 N.W. 186, 188, says: "Rockwell was properly held to have no claim for compensation, because he never performed the service for which alone any compensation is provided. Jayne v. Drorbaugh, 63 Iowa 717. * * * to be entitled to recover from the county, the claimant must be able to show both title to the position and service therein."

Clark v. Herring (1936), supra, 221 Iowa 1224, 1230, 260 N.W. 436, 439, quotes this with approval: "Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered."

Thus we have said several times, commencing in 1883, that a public officer's right to compensation depends upon his performance of the duties of the office or his actual possession thereof. And there is much outside authority to like effect. For example, Bowlin v. Franklin County (1929), 152 Miss. 534, 537, 120 So. 453, 454, states: "* * * the rendition of official services must precede the right to demand and recover the compensation attached to the office * * *."

Commencing in 1904 with Brown v. Tama County, supra, 122 Iowa 745, 98 N.W. 562, 101 Am. St. Rep. 296, we have held a number of times that where a de facto officer is paid the salary of the office during his incumbency, the officer de jure may not recover from the public body the salary for the same period—the public should not be compelled to pay twice for the same service. Our decisions upon this question are reviewed and adhered to in Glenn v. Chambers, 242 Iowa 760, 768–770, 48 N.W.2d 275, 279, 280, filed the day before the instant case was submitted to us. As the Glenn case (which the majority opinion ignores) points out, Brown v. Tama County and the decisions that follow it "express the general rule and accord with the decided weight of authority. [Citations.]"

It is apparent that at least since 1904 this court has been firmly committed to the rule that a public body should not be compelled to pay twice for the same service and payment of salary to a de facto officer during his incumbency is a good defense to an action by the de jure officer against the public for the same salary. But it is said Code section 66.9 has abrogated this rule as applied to this case.

Of course the legislature has the power to change the common law of a state. In re Estate of Dolmage, 203 Iowa 231, 235, 212 N.W. 553; 50 Am. Jur., Statutes, section 345. So here the legislature could compel a public body to pay twice for the same service under such circumstances as appear here. I think section 66.9 falls far short of working such a radical change in the law of this state.

The legislature is presumed to have known the decisions of this court heretofore referred to. In re Estate of Dolmage, supra, 203 Iowa 231, 235, 212 N.W. 553; Aldrich v. Tracy, 222 Iowa 84, 89–91, 269 N.W. 30; 50 Am. Jur., Statutes, section 344. If the legislature desired to abrogate the settled rule of the common law of this state it was required to express such purpose in clear, explicit and unmistakable language. See decisions cited last above, also Bay v. Davidson, 133 Iowa 688, 111 N.W. 25, 9 L. R. A., N. S., 1014, 119 Am. St. Rep. 650; 50 Am. Jur., Statutes, sections 299, 340, 346; 59 C. J., Statutes, section 616, page 1039.

"* * * if the legislature * * * intended to obviate the effect of the decisions of this court * * * it would have expressed its meaning *so clearly as to leave no doubt in the mind of anyone.*" (Italics added.) Aldrich v. Tracy, supra, at pages 90, 91 of 222 Iowa.

"Accordingly, a purpose to effect a radical departure from a firmly established policy will not be implied, but must be expressed in clear and unequivocal language, and such policy is not to be regarded as abandoned further than the terms and objects of the new legislation unmistakably require." 50 Am. Jur., Statutes, section 299, page 281.

"Courts, do not, however, favor repeals of settled principles by implication, and the legislature in the enactment of a statute will not be presumed to intend to overturn long-established legal principles, unless such intention is made clearly to appear by express declarations or by necessary implication." Id., section 340, page 333.

"It is not to be presumed that the legislature intended to abrogate or modify a rule of the common law by the enactment of a statute upon the same subject. Indeed, in doubtful cases, or in cases where a contrary intent is not manifest, clear, obvious, or inescapable, or explicitly and unmistakably indicated by direct, peremptory and unambiguous language, or where the language of the statute is in the affirmative without any negative expressed or implied, it is presumed that no change in the common law was intended, and the statute is generally interpreted as affecting no such change. Statutes are not to be deemed to change a common-law rule by implication, unless the intention to do so is obvious;

the rules of the common law are not to be changed by doubtful implication." Id., section 346, page 340.

It is of course elementary that courts do not favor repeal of statutes by implication and they will not be upheld unless the intent to repeal clearly and unmistakably appears *from the language used* and such a holding is *absolutely necessary*. State ex rel. McElhinney v. All-Iowa Agricultural Assn., 242 Iowa 860, 867, 48 N.W.2d 281, 285, and citations. It is just as clear from the authorities herein cited (including three of our own decisions) that an established rule of the common law will not be held to have been abrogated by a statute which leaves the matter to implication or in doubt. See too Ruby Lbr. Co. v. K. V. Johnson Co., 299 Ky. 811, 819, 187 S.W.2d 449, 453, 166 A. L. R. 1215, 1220, 1221.

Code section 66.9, which it is claimed abrogates the common-law rule, provides:

"An order * * * suspending a public officer from the exercise of his office, after the filing of a petition for the removal from office of such officer, shall * * * automatically suspend the further payment to said officer of all official salary or compensation until said petition has been dismissed, or until said officer has been acquitted on any pending indictments charging misconduct in office."

It cannot be fairly or seriously *claimed* the mere provision in 66.9 that the order of suspension suspends further payment of salary does more than perhaps *imply* an ultimate right to recover the salary following exoneration. But that is not sufficient under the authorities. As stated, a common-law rule will not be held to have been changed merely by implication nor except by direct and explicit language.

The majority decision rests on the failure of section 66.9 to state that the order of dismissal works a forfeiture of the salary during the period of suspension. No one contends the order of dismissal results in forfeiture of the salary. What constitutes a good defense to plaintiff's claim is not the order of suspension but the fact that plaintiff never performed the duties of the office during the time in question and the incumbents who did perform

them were fully paid therefor. Nothing in section 66.9 states—certainly not in clear and unmistakable language—that this is not a good defense to such an action as this.

In seeking the meaning of section 66.9 the entire act and other related statutes should be considered. See Ahrweiler v. Board, 226 Iowa 229, 231, 283 N.W. 889; Eysink v. Board, 229 Iowa 1240, 1243, 296 N.W. 376, 378; Wood Bros. Thresher Co. v. Eicher, 231 Iowa 550, 560, 1 N.W.2d 655, 660; 59 C. J., Statutes, sections 619, 620. The majority has ignored this consideration although it is strenuously argued by appellant.

Section 66.9 was enacted in 1933 (twenty-nine years after our decision in Brown v. Tama County, supra) as section 2 of chapter 23, Acts of the Forty-fifth General Assembly. It relates to nonimpeachable officers. Code section 67.7, relating to the suspension of impeachable state officers, was enacted as section 1 of the same Act. The first sentence of section 67.7 and all of section 66.9 are substantially the same except that it is the governor's, rather than the court's, order suspending an impeachable state officer that works the suspension of further payment of salary to him. *Section 66.9 contains only that provision.* However, section 67.7 goes on to provide in the final sentence:

"If said articles [of impeachment] are not so voted, or if the said officer be acquitted on duly voted articles, the said suspended salary or compensation shall be forthwith paid to said officer, unless an indictment or its equivalent, growing out of his misconduct while in office, is then pending against the said officer, in which case said salary or compensation shall be paid to said officer only on his acquittal or the dismissal of the charges."

The quoted provision demonstrates, if proof were necessary, that the legislature knew how to state in clear and unmistakable terms that suspended salary shall be paid a suspended officer who has been exonerated. It is significant that no such language is found in section 2 of the Act (Code section 66.9). Presumably the omission was deliberate. The Forty-fifth General Assembly obviously was considering the question of payment to both classes of suspended officers. Yet the majority has interpreted section 66.9 precisely as if such a provision as that just quoted were con-

tained therein. In effect the majority has written into 66.9 language like that quoted.

If the legislative intent to require double payment for the same work is directly and unmistakably expressed in section 2 of the Act (66.9) then *the same legislature* added to section 1 thereof (67.7) language which is entirely superfluous and unnecessary. It is much more reasonable to hold that the final sentence of 67.7 was added to make clear and definite the legislative intent that suspended salary "shall be forthwith paid" an impeachable state officer who has been exonerated. If the legislature intended non-impeachable officers to have the same rights, it failed to express such intent in 66.9 in clear and precise language and it is not the function of this court to supply the omission.

If section 66.9, on which plaintiff bases this action, clearly authorizes recovery here, how are we to account for the fact *the same legislature in the same act* omitted from 66.9 such language as it put in 67.7 which plainly authorizes recovery by an impeachable state officer who has been exonerated? Why should this court ignore the omission from 66.9 of such direct language, authorizing recovery, as is found in 67.7? These questions have not been answered by plaintiff's counsel, the trial court, Justice Smith in his opinion, or the majority. Polk County is entitled to an answer. It looks as if the questions cannot be satisfactorily answered and that it is the plain duty of this court to deny recovery for this unearned salary.

Section 365.27 in the chapter on civil service contains a provision somewhat similar to that quoted above from section 67.7. It states, "If the appeal is taken by a suspended * * * employee and reversed, he shall be reinstated as of the date of his suspension * * * and shall be entitled to such compensation as the body having jurisdiction may determine." This is the successor to section 5711, Code, 1924, which was enacted in 1924, about two years after our decision in Harding v. City of Des Moines, 193 Iowa 885, 188 N.W. 135. As pointed out in McClinton v. Melson, supra, 232 Iowa 543, 548, 4 N.W.2d 247, 249, the quoted part of 365.27 applies only to employees under civil service.

In Glenn v. Chambers, supra, 242 Iowa 760, 770, 48 N.W.2d 275, 280, we held, "Certainly there is nothing in * * * section

365.27 * * * which *compels* either a city council or civil service commission * * * to ignore the rule of Brown v. Tama County, supra, 122 Iowa 745, 98 N.W. 562, 101 Am. St. Rep. 296, and the decisions which have followed it." So here, there is nothing in 66.9 which *compels* this court, or even authorizes it, to ignore the rule of Brown v. Tama County and later Iowa decisions.

The majority opinion, especially what it says concerning Harding v. City of Des Moines, supra, 193 Iowa 885, 188 N.W. 135, is contrary to our holding in Glenn v. Chambers, supra. If, as we held in Glenn v. Chambers, notwithstanding section 365.27 such a defense as is here urged may defeat a claim for compensation of a civil service employee illegally removed, surely there is nothing in section 66.9 which requires Polk County to pay plaintiff this unearned salary.

There is another provision in Code chapter 66 that is at least somewhat inconsistent with plaintiff's right to recover. Section 66.23 states:

"Effect of dismissal. If the petition be dismissed on final hearing on the merits, the defendant shall have judgment against the * * * county * * * for the reasonable and necessary expenses incurred by the defendant in making his defense, including a reasonable attorney fee * * *."

Section 66.23 is the only statute for the benefit of a nonimpeachable officer following dismissal of the removal proceeding and it applies only where such dismissal is on final hearing on the merits. If this plaintiff had gone to trial on the removal petition and procured a dismissal on the merits he might have been allowed expenses in making his defense, including an attorney fee, as was done in City of Des Moines v. District Court, 241 Iowa 256, 41 N.W.2d 36. Plaintiff apparently chose not to avail himself of the remedy provided by 66.23. It is noticeable that neither section 66.23, section 66.9 nor any other part of chapter 66 contains any provision authorizing recovery of salary by a suspended nonimpeachable officer upon dismissal of the petition for removal.

The majority opinion says near the end of its Division I "it would be unreasonable to hold that, notwithstanding such dismissal, said official has, by the mere filing of the petition asking for

a removal, been deprived of all that made the office of any pecuniary value." This language is paraphrased from Ward. v. Marshall (1892), 96 Cal. 155, 30 P. 1113, 31 Am. St. Rep. 198. Together with other early California decisions the Ward case followed the minority rule, opposed to that which has always prevailed in Iowa. See annotation 55 A. L. R. 997, 1005; 43 Am. Jur., Public Officers, section 384,n5; Brown v. Tama County, supra, at page 750 of 122 Iowa. The early California rule was changed by statute in that state and later California decisions accord with the rule that up to now has always been followed in Iowa. See annotation 55 A. L. R. 997, 1007.

Further, as previously indicated, it is not the mere filing of the removal petition, as the majority asserts, that deprived plaintiff of his claim to compensation. It is because he performed none of the duties of the office, those who did perform them in good faith pursuant to their appointment were fully paid therefor by the county and the latter should not be compelled to pay twice for the same service.

But why would it be unreasonable to deny this large claim for unearned salary when the legislature obviously has made no clear provision for payment of two salaries for the same service in one office? Why would it be any more unreasonable to deny recovery here than it was to deny recovery in Brown v. Tama County, Harding v. City of Des Moines, McClinton v. Melson, and Glenn v. Chambers, all supra? The majority does not tell us.

Harding and Glenn were entitled to the protection of the Civil Service Law (now chapter 365, Code, 1950). Harding was also entitled to the protection of other statutes as a veteran of the Civil War. McClinton was a veteran of World War I, entitled to the benefits of the Soldiers Preference Law (now Code chapter 70). All three were *held* to have been removed *wrongfully and illegally* in violation of one or the other of those laws. Yet we decided none of them was entitled to recover the salary during the period of his suspension because the public should not be compelled to pay twice for the same service. (The Glenn decision was conditioned upon a showing the person who performed the services had been paid therefor.)

Unlike the Iowa cases just cited, here plaintiff claims no rights under the Civil Service Law or the Soldiers Preference

Law. *Nor has it ever been adjudicated that plaintiff's suspension was wrongful.* He was suspended in strict compliance with Code chapter 66. The trial court dismissed the removal action in April 1951, not on the merits but because the term of office for which plaintiff was elected had expired more than fifteen months earlier and the right to remove him was therefore a moot question. The court's order in the removal action recites: "* * * since the issue of removal is now a moot question defendant [plaintiff here] is not entitled to a ruling on the merits. * * * This ruling is not intended as a determination of the merits of this action." I disagree with the majority's statement that the legal effect of this is a determination that plaintiff had done nothing to warrant his removal.

If we were right in Harding v. City of Des Moines, McClinton v. Melson and Glenn v. Chambers, all supra, in denying recovery for salary to a public employee entitled to the benefits of the Civil Service Law or the Soldiers Preference Law whose removal was held to have been arbitrary and illegal, it seems quite unfair to the taxpayers of Polk County to award this plaintiff salary of about $10,000 which he never earned and which has been paid the legally chosen incumbents who in good faith did earn it.

Under the majority opinion a nonimpeachable officer who secured the dismissal of charges against him because they have become moot due to the expiration of his term receives pay he never earned, while a public employee who has been illegally discharged can recover nothing. Why should there be such discrimination in favor of such an officer? No reason for such an inequitable result is suggested. There seems to be greater reason to withhold the pay of such an officer than to withhold the pay of such an employee. On this subject McKinley v. City of Chicago, 369 Ill. 268, 271, 16 N.E.2d 727, 728, states:

"The two plaintiffs insist that the rules which we have just discussed apply only to mere positions or employments, not to public elective officers, but we fail to discern the validity of such an argument. On the other hand, it seems to us that these rules apply with greater vigor and more urgent public necessity to offices than to mere employments."

The special concurrence of Justice Smith seems intended to cast doubt on the applicability to this case of the common-law rule

against double payment which has always prevailed in Iowa, irrespective of whether that rule has been abrogated by Code section 66.9. There can be no fair doubt that plaintiff is not entitled to recover unless section 66.9 plainly gives him that right.

It is true that in Brown v. Tama County, supra, 122 Iowa 745, 98 N.W. 562, 101 Am. St. Rep. 296, there had been a contest between plaintiff and another claimant to the office. However, the Brown opinion thus states the question for decision (page 749 of 122 Iowa): "Where, during the incumbency of a county officer de facto under color of title, the county pays him the salary provided by law, can the officer de jure, after obtaining possession of the office under final judgment of ouster, maintain an action against the county for payment to himself of the salary for the same period?"

The Brown opinion also points out, as previously indicated (page 757 of 122 Iowa), that the right to recover compensation " 'depends upon the performance of the duties, or, at least, there must be possession of the office in fact * * *.' "

Further, there was no contest between rival claimants for an office in the Harding, McClinton and Glenn cases, supra. In each the public body was as much the moving party in ousting the plaintiff from his position as was Polk County here. This plaintiff's suspension was by the district court in strict compliance with statute. If it was wrongful the wrong was that of the district court and not, as the special concurrence asserts, of Polk County. The taxpayers of the county should not be penalized for it. As stated, in the cited cases each plaintiff was suspended in violation of statute and his place later filled by another who was paid for his services. The rule of Brown v. Tama County that the people cannot be compelled to pay twice for the same service was held applicable.

In view of our decisions that have followed Brown v. Tama County it is wholly immaterial that an election contest may have been the reason for Brown's failure to perform the duties of his office or, if it be a fact, that the common-law rule may have originated in cases of that kind. We have uniformly applied the rule to cases of wrongful suspension and have never confined it to situations where there was a contest between rival claimants to the office, as the special concurrence indicates.

Nor is it material whether Graber and Armstrong were de facto officers or, as the special concurrence says, "de jure temporary officers." At least their claim to the office was fully as strong as that of de facto officers. Weakness of claim to the office by the incumbent who was paid for his services might militate against application of the rule which forbids double payment. Surely strength of such claim should not do so.

In Harding v. City of Des Moines, supra, 193 Iowa 885, 890, 188 N.W. 135, 138, policemen held to have been wrongfully suspended were denied their salaries for the period of their suspension even though the salaries had been paid other regularly appointed policemen, not mere de facto officers. The opinion quotes with approval from the Colorado court (page 891 of 193 Iowa): "The rule adopted in this state is based on public policy, to the effect that the people cannot be compelled to pay twice for the same service." This basis for the rule clearly applies whether the service is performed, and pay received by a de facto, or "a de jure temporary," officer.

Of course I agree with the special concurrence that section 66.9 is not in derogation—certainly not clearly so—of the common-law rule that has always prevailed in this state. As before explained, I cannot agree that such rule is limited to the fixing of "the rights of de facto and de jure officers respectively claiming title to the same office." This court has never so limited it.

The special concurrence asserts that under "what seems the clear intendment" of section 66.9, the county, in commencing ouster proceedings, assumed the burden either of substantiating the charges or of paying both the officers who performed the duties and plaintiff. Section 66.9 does not so state, certainly not in the plain and unmistakable language the authorities require. It is not our province to read such a provision into 66.9—a provision like that found in clear and explicit terms in section 1 of the same Act (67.7). It is our duty to give effect to the same legislature's *omission* of such a provision from 66.9 and not make effective a provision that was omitted.

I would reverse.

MANTZ, J., joins in this dissent.